McQUEEN
v.
SUN OIL CO. et al.
No. 11763.

United States Court of Appeals
Sixth Circuit.
June 22, 1954.

Thomas E. Sandidge, Owensboro, Ky., for appellant.

John B. Anderson, Owensboro, Ky. (E. B. Anderson, Owensboro, Ky., Leo King, William G. Craig, Henderson, Ky., Hubert Meredith, Greenville, Ky., on the brief), for appellees.

Before ALLEN and McALLISTER, Circuit Judges, and STARR, District Judge.

STARR, District Judge.

Plaintiff McQueen appeals from a judgment dismissing his complaint, whereby he sought to quiet his title under a certain oil-and-gas lease executed by defendant J. T. Sauer July 24, 1951, covering 125 acres of land in Daviess county, Kentucky. To present the issues raised in the trial court and on this appeal, the factual situation must be set forth in some detail. The parties are herein referred to as plaintiff and defendants.

On June 2, 1943, defendant J. T. Sauer had executed an oil-and-gas lease covering the above-mentioned 125 acres in Daviess county to defendant Sun Oil Company, which lease provided that it should remain in force for a term of five years and "as long thereafter as oil or gas or either of them is produced from said land by lessee." In that lease Sauer reserved to himself a ⅛ royalty interest in all oil and gas produced, and the lease further provided:

"If no well be commenced on said land on or before the 2nd day of June, 1944, this lease shall terminate as to both parties, unless the lessee shall on or before that date pay or tender to the lessor, the sum of $125, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. * * * In like manner and upon subsequent like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. * * *

"If, after the expiration of the primary term of this lease (five years), production on the leased premises shall cease from any cause, this lease shall not terminate *provided lessee resumes operations within sixty days (60) from such cessation*, and this lease shall remain in force during the prosecution of such operations and, if production results

therefrom, then as long as production continues."

The Sun Oil Company paid the renewal rentals for 1944, 1945, and 1946. On December 6, 1946, the Sun Oil Company assigned the lease to defendants, Damron, Gary, and Savage doing business as the D. G. & S. Oil Company, but reserved to itself an overriding royalty of $\frac{1}{8}$ of all oil and gas produced. On December 8, 1946, the D. G. & S. Oil Company assigned a $\frac{1}{8}$ working interest in the lease to defendant Carl A. Morrison, and on the same date it assigned a $\frac{7}{16}$ working interest to defendant James C. Ellis, and on February 18, 1949, it assigned an additional $\frac{3}{16}$ working interest to Ellis. The original lease executed June 2, 1943, and the above assignments were duly recorded.

The owners of working interests in the lease completed the drilling of the *first* oil-and-gas well on the land in January, 1947. This first well produced oil and gas in relatively small quantities until March, 1951, when production and operation of the well ceased entirely. It should be noted that the defendants did not resume operation of this first well within 60 days after production ceased in March, 1951. The owners of working interests in the lease completed the drilling of a second well on the land in March, 1949, and it is admitted that this was a dry hole.

More than 60 days after production from the first well ceased in March, 1951, and on July 24, 1951, defendant Sauer executed a new oil-and-gas lease on the same land to one Mark Curtis, and on August 8, 1951, Curtis assigned this lease to plaintiff McQueen. On August 11, 1951, McQueen wrote defendants D. G. & S. Oil Company and Morrison and Ellis, stating in substance that he had acquired an oil-and-gas lease from J. T. Sauer covering the land in question, and he requested them to send him a discharge and release of the original June 2, 1943, lease from Sauer to the Sun Oil Company, which he claimed had expired. In their reply to the above letter defendants' attorneys stated in effect that the defendants refused to execute a discharge of the original June 2, 1943, lease and that they claimed that lease was still in force and effect.

On September 28, 1951, which was more than two months after Sauer executed the new lease now held by plaintiff McQueen, and more than five months after production from the first well had ceased, the defendants began drilling a third well on the land, which was completed as a small producer in October, 1951. It may also be noted that defendants began the drilling of this third well after the present action was commenced by plaintiff on September 20, 1951.

In his action plaintiff McQueen asked that the July 24, 1951, lease executed by Sauer to Curtis and assigned to plaintiff be held valid; and that the prior lease held by defendants, executed June 2, 1943, to the Sun Oil Company be set aside and removed as an encumbrance and cloud upon plaintiff's right and title under the July 24th lease. Defendants Damron, Gary, Savage, Morrison, and Ellis filed answer and motion to dismiss the complaint, and later an amended answer and counterclaim in which they made Sauer a party defendant. They denied plaintiff's right to the relief sought, contending that both plaintiff McQueen and defendant Sauer were estopped to deny the validity of the original June 2, 1943, lease from Sauer to the Sun Oil Company, on the grounds: (1) That such lease and assignments thereof were on record; (2) that Sauer had accepted lease renewal rentals in 1944, 1945, and 1946; (3) that in July, 1951, Sauer had requested defendant Ellis to drill a third well on the land; (4) that Sauer had requested Ellis to delay the beginning of this third well until Sauer had harvested his soy bean crop from the land; (5) that in February, 1952, the other defendants had paid Sauer the sum of $30 in settlement of his claim for damages to the land caused by oil escaping from a tank in December, 1951, and that he had executed a release of such claim; and (6) that Sauer had accepted royalties on the oil and gas produced from the first

well. It appears that a check for a small amount of royalty for the production from the third well was sent to Sauer in December, 1951, or January, 1952, but there is some dispute in the testimony as to whether the check for this payment was accepted by Sauer.

The principal question in this case is whether the original June 2, 1943, lease from Sauer to the Sun Oil Company expired and terminated by its own terms prior to the execution of the new lease from Sauer to plaintiff's assignor Curtis on July 24, 1951. The district court did not determine this question, but dismissed plaintiff McQueen's action solely on the ground that both he and defendant Sauer were estopped from questioning the validity of the original June 2, 1943, lease from Sauer to the Sun Oil Company. We are convinced that the court erred in its dismissal, as the record discloses no facts which would operate as an estoppel against plaintiff McQueen.

■ The original lease of June 2, 1943, from Sauer to the Sun Oil Company provided in effect that if, after expiration of the primary term of five years on June 2, 1948, production on the leased premises ceased and the lessee did not resume operations within 60 days after such cessation, the lease would terminate and end. The record clearly shows that the production from the first well ceased in March, 1951, and that the defendants did not resume operation of that well within 60 days after such cessation. Therefore, the June 2, 1943, lease under which defendants base their claims, expired and terminated by its own terms at the expiration of 60 days after March, 1951. After the expiration and termination of the June 2, 1943, lease Sauer held the land unencumbered and free of said lease, and he was then legally entitled to execute the new lease to Curtis on July 24, 1951. No question as to the forfeiture or cancellation or abandonment of the June 2, 1943, lease is involved, as it terminated and ended by its own terms several months prior to the time Sauer executed the new lease to Curtis, which plaintiff McQueen now holds.

■ It is clear that the acts and doings of lessor Sauer subsequent to his executing the new lease to Curtis on July 24, 1951, could not in any way affect the rights of Curtis and plaintiff McQueen under that lease. Therefore, Sauer's subsequent acts and doings could not operate as an estoppel against Curtis and his assignee, McQueen. There was no basis in fact or law for the defendants' contention that plaintiff McQueen was estopped from questioning the validity of the June 2, 1943, lease under which the defendants claim. Furthermore, there was no basis for the defendants' contention that Sauer was estopped from questioning the validity of the June 2, 1943, lease, inasmuch as defendants had permitted that lease to terminate and end by its own terms.

■ The good faith and the diligence of the defendants in developing the lease, and their testimony as to the amount expended by them in drilling the wells on the leasehold, have no bearing on the question of the validity of the July 24, 1951, lease held by plaintiff, as the defendants had permitted their June 2, 1943, lease to terminate and end by its own terms. The defendants' contention that the district court was without jurisdiction because the requisite jurisdictional amount was not involved is without merit. The plaintiff, apparently in good faith, alleged an amount in controversy sufficient to confer jurisdiction, and furthermore, there was testimony that the July 24, 1951, lease in question had a sale value of $5,000. The trial judge correctly held that the district court had jurisdiction. In Scottish Union & National Ins. Co. v. Bejcy, 6 Cir., 201 F.2d 163, 165, this court said:

"The rule, however, is that the sum claimed by the plaintiff controls, if the claim is made in good faith, and it must appear to a legal certainty that the claim is for less than the jurisdictional amount to justify dismissal, St. Paul Mercury Indemnity Company v. Red Cab Company, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845."

See also Branding Iron Club v. Riggs, 10 Cir., 207 F.2d 720, 723; Mercer v. Byrons, 1 Cir., 200 F.2d. 284, 285, 286.

In summary we conclude: (1) That the June 2, 1943, lease from Sauer to the Sun Oil Company expired, terminated, and ended by its own terms prior to July 24, 1951, when Sauer executed the new lease which plaintiff McQueen now holds; (2) that plaintiff McQueen is not estopped by the acts and doings of Sauer subsequent to his execution of the new lease on July 24, 1951, from asserting the invalidity of the June 2, 1943, lease; and (3) that the July 24, 1951, lease from Sauer to Curtis, now held by plaintiff McQueen as assignee, is a valid lease and that the plaintiff is entitled to all his rights thereunder.

The judgment of the district court is reversed, and the case is remanded for the entry of a judgment in favor of the plaintiff in accordance with this opinion.