SULLIVAN AND GARNETT et al.,
Appellants,

v.

Ashby Minor JAMES et al., Appellees.

No. 13208.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 11, 1957.

Rehearing Denied Jan. 15, 1958.

Wood, Pratt & Boykin, Corpus Christi, Swearingen & Sayles, San Antonio, Joe Caldwell, Ellis Clark, Rockport, Neel & Seaman, Corpus Christi, for appellants.

Charles E. Crenshaw, Austin, for appellees.

BARROW, Justice.

Our original opinion delivered and filed November 6, 1957, is withdrawn and the following opinion substituted in lieu thereof.

Appellees were owners of an undivided one-fifth interest in two tracts of land in Aransas County, consisting of 636 acres out of the Williams Lewis League North of the old town of Lamar, and 117.55 acres out of Reserve D., and certain outlots of said town. Appellants, Sullivan and Garnett, were the owners of an oil, gas and mineral lease on said land, dated July 31, 1946, for the primary term of five years. The other appellants were owners of certain royalty interests under a royalty contract from Mattie B. Inglehart to Walter R. Taber, executed October 5, 1936, and being for the primary term of fifteen years and six months. Appellees cause of action was based upon the allegation that production in paying quantities had ceased and that by reason thereof, the lease and outstanding royalties had expired. The judgment of the trial court is based upon a jury verdict, finding: First, that the Shelly No. 2 (the only well which produced on the land during the relevant period), ceased to produce in paying quantities during the year 1952; Second, that such cessation occurred on June 30, 1952; Third, that such cessation continued for a period of sixty days prior to October 15, 1952. The parties stipulated that appellants Sullivan and Garnett commenced drilling a new well, the Kate Edwards, on that date.

By appellants' first point they contend that there was no competent and admissible evidence to support the verdict. By their second point they contend that by reason of the fact that appellees' witness Joe Ballanfonte, a petroleum engineer with years of experience in the oil business, was not an accountant, and had no personal knowledge of the operations of the lease, he was not qualified to give an opinion that the operators, Sullivan and Garnett, did not earn a profit over and above operating and administering expenses from the lease in question during the first six months of 1952. By their third point ap-

pellants contend that there was insufficient evidence to support the verdict of the jury and the judgment based thereon terminating the lease. We shall consider these points together.

■ Appellants Sullivan and Garnett furnished to appellees what was purported to be a complete statement of receipts and expenditures, covering the lease for the relevant period of time, which the witness Ballanfonte used in forming his opinion. These figures were prepared by appellants' own accountant, who testified they were taken from appellants' books. From these figures, by simply adding up the receipts on the one hand and the expenditures on the other, the difference would readily determine the profit or loss. The trial court did not abuse his discretion in permitting the witness to testify to that result. Moreover, the jury had these figures before them and could make their own calculations. The testimony showed that these figures were made by allocating expenses on the per well basis, and that they were kept that way on appellants' books. The appellants, Sullivan and Garnett, were operating the Shelly well on this lease together with five producing wells on other leases, making a total of six wells being operated as a unit, with the same operating and administrative expenses covering them.

Appellants' witnesses testified that the operating and administrative expenses should be allocated on the income basis, that is, if one well produces five times as much income as another it should be allocated five times as much expense, excluding ad valorem taxes and gross production tax. Thus, if a well produced as much as one dollar per annum revenue over and above taxes, it would be producing in paying quantities, regardless of the actual operating and administrative expenses incurred.

The record shows that during May, 1952, the month in which only six barrels were produced from this lease, appellants, Sul-

livan and Garnett, negotiated with the owners of the land seeking to secure a renewal of the lease, and succeeded in securing a renewal from all the co-owners except appellees. Thus it appears that Sullivan and Garnett were in the position of operating under the old lease as to appellees and under a new lease as to the other co-tenants.

■ These conflicting theories and methods of calculation were before the jury. The question of whether or not an oil well is producing in paying quantities is a question of fact for the jury. Woodson Oil Company v. Pruett, Tex.Civ.App., 281 S.W.2d 159; Bain v. Strance, Tex. Civ.App., 256 S.W.2d 208; Clark v. Holchak, 152 Tex. 26, 254 S.W.2d 101; Garcia v. King, 139 Tex. 578, 164 S.W.2d 509.

■ The jury having in the record a full six months period of production and expenses showing a net loss, their verdict is supported by sufficient evidence.

■ The appellants also present the contention that the question should be determined by the amount of sales of oil during the relevant period of time. We overrule this contention. The contract provides that oil must be produced in paying quantities. It appears that every barrel of oil that was produced from the well from January 1, 1952, to and through the month of June, 1952, was accounted for at the stipulated price of $2.90 per barrel. We think it is immaterial when the oil was sold, if at all.

■ Appellants complain of the court's action in submitting Special Issues Nos. 1 and 2, and of its failure to disregard the jury's answers thereto. In response to Special Issue No. 1, the jury found that the well in question failed to produce oil in paying quantities during the year 1952, and in response to Special Issue No. 2, they found that the cessation occurred on June 30, 1952. We regard these issues as proper and correctly submitted.

■ Appellants also complain of the court's action in submitting Special Issue No. 3. In response to this issue the jury found "that such cessation to produce oil in paying quantities continued for a period of more than 60 days prior to October 15, 1952." It was stipulated that appellants commenced operations to drill a new well on the leased premises on that date. The lease contained the following provision:

"If, after the expiration of the primary term of this lease, production on the leased premises shall cease from any cause, Lessee shall have a period of sixty (60) days from the stopping of production within which at his election, to commence operations for the drilling of another well, deepen an existing well, or wells, or otherwise to attempt to restore the production of such existing well or wells, and if such work is so commenced and prosecuted with reasonable diligence and production results therefrom, this lease shall remain in force so long as production continues."

Hence it becomes apparent that Special Issue No. 3 was proper and material, and that the trial court did not err in submitting Special Issues Nos. 1, 2 and 3, and in refusing to disregard the findings thereon.

■ Appellants also complain of the court's action voiding and holding of no further effect the non-participating royalty interests of certain appellants. It appears from the record that by deed dated October 5, 1936, Mrs. Mattie Inglehart, a widow, now deceased, mother of appellees, conveyed a certain term non-participating 1/16 royalty on all oil, gas, and other minerals produced and saved from the grantor's interest in the land in question. It is under this conveyance that appellants claim royalty interest. The conveyance contained the following provisions:

"It is further agreed and herein stipulated that in case there is no pay-ing production on said land on October 5th, 1951, and for six months thereafter, that this grant shall become null and void and the minerals hereby conveyed shall revert to the said Grantor, her heirs and assigns, but should there be such production, then and in that event, this grant shall remain in full force and effect until such production ceases, after which this instrument shall become null and void."

Thus it appears that the fifteen years and six months' period ended on April 5, 1952. The jury having found upon sufficient evidence that the well ceased to produce in paying quantities thereafter, on June 30, 1952, the trial court was correct in voiding and terminating these term royalties. Francis v. Pritchett, Tex.Civ. App., 278 S.W.2d 288; Clark v. Holchak, supra.

Appellants also complain that the court erred in rendering judgment against defendants Oil Securities Investment Corporation, Edith Whitely and Ed Dunne, who were cited by publication and did not appear in person or by counsel, nor was an attorney appointed to represent them.

■ It appears from the record that this matter was called to the attention of the court at the time of rendering judgment, and that the judgment is so drawn as to exclude any recovery against these parties, and that plaintiffs were required to execute and record an instrument in effect confirming in these parties the same interest they held prior to the suit. This irregularity could affect no one but these parties, Petroleum Producers Company v. Reed, 135 Tex. 386, 144 S.W.2d 540; Douglas v. Butcher, Tex.Civ.App., 272 S.W.2d 553; Magnolia Petroleum Company v. Storm, Tex.Civ.App., 239 S.W.2d 437, and it in no way affected appellants. Rule 434, Texas Rules of Civil Procedure.

The judgment is affirmed.