**Edwin L. COX, Appellant,**

v.

**GULF OIL CORPORATION, Appellee.**

**No. 6819.**

United States Court of Appeals
Tenth Circuit.

March 7, 1962.

T. Murray Robinson, Oklahoma City, Okl. (C. E. Barnes, Oklahoma City, Okl., on the brief), for appellant.

Edwin S. Hurst, Oklahoma City, Okl. (James B. Diggs and Comet C. Johns, Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON, BREITENSTEIN and HILL, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The issue is whether an Oklahoma oil and gas lease was extended beyond its primary term by a well located off the lease but within a drilling and spacing unit which included part of the leased premises. The trial court held that the term was extended. Jurisdiction is based on diversity.

One Davis and wife executed the lease in question on February 4, 1954, for a 5-year primary term. Gulf became the owner of the lease by assignment. The premises, located in McClain County, Oklahoma, included a 20-acre tract in the East Half of the Southeast Quarter of Section 17. That section was in an area in which the Oklahoma Corporation Commission had established 80-acre drilling and spacing units for production from the Bromide sand. The West Half and the East Half of the Southeast Quarter of Section 17 each composed such a unit.

Gulf drilled the Smith well in the West Half of the Southeast Quarter of Section 17, discovered oil in commercial quantities in the Bromide sand, and then drilled to the deeper Oil Creek sands where gas was discovered in commercial quantities. The gas was of such a quality and the well was at such a location that commercial gas production was then impossible. Although casing had been run into the Oil Creek sands, the hole was blocked off above those sands and the well was completed as an oil producer from the Bromide sand on December 28, 1954.

In January, 1955, on the application of another producer, the Commission established 160-acre drilling and spacing units for Oil Creek gas production in the area and the Southeast Quarter of Section ·17 was one of those units. Thus as to Bromide production the Davis lease and the Smith well were in different units but they were in the same unit for Oil Creek gas production.

The primary term ended February 3, 1959. There had been no Oil Creek production from the Smith well at that time. The Davis lease had not participated in the Bromide production because it was

not in the same unit. Gulf continued to pay delay rentals throughout the primary term on the Davis lease.

Lease ownership was the same in both the West Half and the East Half of the Southeast Quarter of Section 17 but proportional interests were different. Prior to the drilling of the Smith well, Gulf and the other interest owners in the West Half entered into an operating agreement which named Gulf as the operator.

In December, 1959, Gulf and the others interested in the East Half entered into an operating agreement and operations were immediately commenced to complete the Smith well as a dual producer from both the Bromide and the Oil Creek sands. These operations were accomplished in the same month at a cost of $78,000 of which Gulf's share was $38,000. Sale of Oil Creek gas from the Smith well began on March 19, 1960, and by the end of that year gas and condensate of an approximate value of $168,500 had been produced and sold from that well.

Davis died in 1959 and on March 9, 1960, his executors made an oil and gas lease covering the same premises as the 1954 lease held by Gulf. By assignment, appellant Cox became the owner of the 1960 lease and brought this suit to quiet his title against the adverse claim of Gulf.

■ Appellant Cox contends that the lease was not extended because there was no Oil Creek well for oil or gas production drilled or drilling on the Davis lease, or lands communitized therewith, at any time prior to the expiration of the primary term of that lease. The 20 acres of the Davis lease in the East Half of the Southeast Quarter of Section 17 are within an Oil Creek drilling and spacing unit established by the Commission in

January, 1955, and the Smith well is the permitted well for that unit. This Commission action placed the Oil Creek discovery on the Davis lease as of the date of the order.[1] No other result is possible as the Smith well was the permitted well for the unit. This means that no well could be drilled for Oil Creek production on the Davis lease and if that lease is to participate in Oil Creek production it does so as a participant in the unit on which the Smith well is located.

■ Cox further asserts that discovery without production within the primary term is not sufficient to extend the lease. None of the Oklahoma decisions which he cites in support of this contention apply to the facts with which we are concerned.[2] Tests made in December, 1954, of the Oil Creek sands tapped by the Smith well showed 12,800,000 cubic feet of gas per day and 35 barrels of condensate per hour from one interval and 10,700,000 cubic feet of gas per day and 13½ barrels of condensate per hour from another interval. Seven-inch casing was set through the Oil Creek sands. At the time there was no adequate market for the Oil Creek gas. The well was plugged above the Oil Creek sands and completed as an oil producer from the Bromide.

In McVicker v. Horn, Robinson and Nathan, 322 P.2d 410, 71 A.L.R.2d 1211 (Okla.) it was held that a shut-in gas well continued a lease with a thereafter clause based on production. We followed the McVicker case in Panhandle Eastern Pipe Line Company v. Isaacson, 10 Cir., 255 F.2d 669, 673–674, and in Whitaker v. Texaco, supra. Cox urges that the shut-in gas well rule does not apply here because the Smith well was not completed as an Oil Creek producer and because its completion as a Bromide producer in which the Davis lease did not

1. Whitaker v. Texaco, Inc., 10 Cir., 283 F.2d 169, 177.

2. See Pine v. Webster, 118 Okl. 12, 246 P. 429 (no production in paying quantities —well plugged and abandoned); Anthis v. Sullivan Oil & Gas Co., 83 Okl. 86, 203 P. 187 (well plugged and abandoned);

Brown v. Shafer, 325 P.2d 743 (Okla.) (no production in paying quantities). Continental Oil Co. v. Osage Oil & Refining Co., 10 Cir., 69 F.2d 19, certiorari denied 287 U.S. 616, 53 S.Ct. 24, 77 L.Ed. 535, involved an Oklahoma lease on which the well had been abandoned.

share does not constitute continuous operations toward the completion of an Oil Creek well. We do not agree.

The parties stipulated:

"There was not an adequate and satisfactory market for the Oil Creek gas prior to this time [December, 1959] and Gulf exercised due diligence in securing this market."

A witness for Gulf testified without contradiction that it would have been poor operating practice to install dual completion equipment to permit production from both Bromide and Oil Creek sands before a market for Oil Creek gas was obtained. As diligence to market is admitted, the fact that the well was plugged and not dually completed before the primary term expired does not remove this case from the applicability of the shut-in gas well rule stated in the McVicker and Panhandle cases. In the circumstances presented, Gulf acted prudently and with reasonable diligence.

The decision on this point is controlled by Whitaker v. Texaco, supra, unless there is validity to the distinction made by Cox that in Whitaker part of the lease was within both the unit from which oil production was secured and the unit from which gas was later produced. In the case at bar the Davis lease was not within the Bromide unit on which the Smith well was the permitted and producing well. This makes no difference as the Commission order unitizing the Oil Creek formation placed the Davis lease within the Oil Creek unit and the drilling of the Smith well to the Oil Creek sands was discovery within the primary term. The sole question is one of diligence and the finding of diligence by the trial court is sustained by the record.

■■ Other points urged by Cox may be disposed of summarily. The delay in execution of an operating agreement covering the Oil Creek sands until after the expiration of the primary term is unimportant. As we pointed out in Whitaker,[3] the question is one of lease continuation, not of compulsory unitization. The royalty interests of the lessors are protected by operation of law. Cox, who claims under a top lease,[4] has no greater standing than his lessors.

■ Finally it is said that the declaration of pooling required by the order pooling the Oil Creek sands was not filed until 1960, and that there could be no dual completion of the Smith well without approval of the Commission. If there were any violations of the Commission's orders or rules, that is a matter for Commission consideration and has no bearing on the rights of these litigants.[5]

Affirmed.

3. 283 F.2d 172.

4. See Frankfort Oil Company v. Snakard, 10 Cir., 279 F.2d 436, 445, footnote 23, certiorari denied 364 U.S. 920, 81 S.Ct. 283, 5 L.Ed.2d 259.

5. See Simpson v. Stanolind Oil & Gas Co., 10 Cir., 210 F.2d 640, 642.