**M. F. MITCHELL, Appellant,**

v.

**William BROCKENBUSH et al., Appellees.**

**No. 11006.**

Court of Civil Appeals of Texas.

Austin.

Nov. 28, 1962.

Rehearing Denied Dec. 19, 1962.

McKay & Avery, Austin, for appellant.

Camp & Camp, Robert L. Ellett, Cameron, for appellees.

ARCHER, Chief Justice.

This is an appeal from a judgment rendered by the District Court of Milam County on March 5, 1962, against the defendant M. F. Mitchell, as lessee, and in favor of the plaintiffs, Wm. Brockenbush and members of his family, as lessors, declaring a certain oil and gas lease between the parties to be cancelled, lapsed and terminated in accordance with its own provisions and removed as a cloud on plaintiffs' (appellees) title to approximately 553 acres of land, more or less, in Milam County.

The appeal is founded on seven points assigned as error by the Trial Court in declaring appellant's lease terminated on grounds of failure to pay delay rentals on March 12, 1960, and on March 12, 1961, when as a matter of law there was no obligation to pay said delay rentals; in declaring appellant's lease terminated on the ground that there was a failure to obtain production in paying quantities, because there was no evidence to support such finding; that there is no evidence to sustain the judgment; because the great weight and preponderance of the evidence is to the effect that delay rentals had been paid and appellant was engaged in operations for

drilling wells; in rendering the judgment because appellees failed in discharging their burden of proof; because the evidence is insufficient to sustain the judgment; and finally the court erred in failing to render judgment for appellant on his cross-action for slander of title.

The first six points are presented and briefed together.

The Minerva oil field was discovered in 1921, and the production is small. The spacing is 300′ and 150′, one well to 2.1/6 acres. These being marginal wells there is no fixed allowables.

On March 12, 1955, the lease at issue was made, and covers 6 tracts and provided that for the purpose of determining the amount of any money payment, the land shall be considered to comprise 553 acres. The lease was for a 10 year primary term. Sections 5 and 6 of the lease are as follows:

"5. If operations for drilling a well or excavating a mine be not commenced on said land on or before the 12th day of March, 1956, this lease shall terminate as to both parties, unless lessee on or before that date shall pay or tender by the check or draft of lessee, to lessor, or to lessor's credit in the Rockdale State Bank at Rockdale, Texas, or its successors, which shall continue as the depository, regardless of changes in ownership of said land, the sum of Five Hundred Fifty Three Dollars, which shall operate as rental and cover the privilege of deferring commencement of operations for the drilling of a well or excavating a mine for twelve (12) months, from said date. In like manner and upon like payments or tenders the commencement of such operations may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein covers not only the privileges granted to the date when said first rental is payable as aforesaid, but

also lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"6. If on any rental date there be neither operations in progress for the drilling of a well or excavating of a mine on said land, nor production therefrom because of voluntary shutdown or for any other reason, this lease shall terminate, unless lessee on or before said date shall make or resume the payment of rentals as herein set forth; provided if such operations be abandoned within a period of ninety (90) days prior to any rental date or if production ceases within such ninety (90) days' period, lessee shall have a period of ninety (90) days after such abandonment of operations or cessation of production within which to commence reworking operations or operations for the drilling of another well or excavating a mine, or within which to make said rental payment, and the commencement of such operations or the payment of such rental within said ninety (90) days period shall have the same force and effect as though commenced or paid on or before said rental date."

The bonus in the sum of $2,755.00 was paid. The delay rentals were paid based on a mistaken calculation of 551 acres and such were accepted by the lessors and we do not consider this minor difference in payments to be of material consequence.

The last deposit of delay rentals was made on March 10, 1959, deferring drilling operations for a 12 month period.

The prime issue in question is: Were drilling operations and production in paying quantities had during the 12 month period subsequent to March 10, 1960, and thereby keeping the lease in full force and effect?

There appears to be no dispute but that appellant Mitchell did drill wells on the tract, some of which were dry, the fourth drilled in 1959 was claimed to be a producer,

and when tested had a flow of about 4 barrels per day. An earthen tank was filled; there was a delay of three weeks awaiting the arrival of a 100 barrel tank, but because of muddy conditions at the well site, delivery could not be made available until the last of February 1960. There was evidence that Mitchell was working on the well during February and March 1960.

Ernest Snyder testified that he worked on the well, pulled the pump once, and the pipe once and burned the paraffin out and put the pipe back and made the well produce oil and that this work was done about the middle of 1960.

The appellant testified as to the drilling and of the trouble he had with the well during the first five or six months because of the high paraffin content. A pumping was started around March 1960 and a 100 barrel tank was filled about half full. That because of the high paraffin content the tubing in the well, after pumping for a week, would have to be pulled and cleaned out, and that this was done four to six times.

The appellant further testified that in July or August 1960, he put the well on a jetting process and has used that method since, and that paraffin does not bother production because the air pressure blows the pipe and production string clean; that the production operation was not expensive; that the electric bills run about $6.00 per month and the well was on automatic production. 113 barrels were sold in March 1961 for $236.95, such sum being now in escrow, because of the refusal of some of the lessors to sign a division order.

Appellees take the position that the lease lapsed and terminated because on March 12, 1960, drilling operations by appellants were not in progress; production in paying quantities was not being obtained from the lease and such was not being done or had on March 12, 1961.

As we have hereinabove stated the question to be determined in this appeal is, was there sufficient evidence submitted to the court that on March 12, 1960, or on March 12, 1961, drilling operations by appellant were not in progress, production in paying quantities was not being obtained from the lease on either of the above dates.

We believe that the trial court erred in rendering judgment declaring the lease contract had lapsed by reason of the failure of the defendant to pay the delay rentals on the 12th of March 1960, or on the 12th of March 1961, and by reason of the failure on the part of the defendant to obtain production in paying quantities up to the present time.

There is no question raised by appellant that the cash delay rentals were paid on either March 12, 1960 or March 12, 1961. The sole issue is, was there drilling operations on the land within the terms of the lease before the expiration thereof, and that there was no commercial production had from the land.

The evidence relied on by the trial judge in entering the judgment was that of the defendant Mitchell, called as an adverse witness, whose testimony we have hereinabove referred to and after this evidence the plaintiffs rested.

The defendant called as witnesses a number of persons, one of whom was H. O. Witt who testified as to the drilling of 4 wells for appellant beginning in September 1959 and none were producers except one drilled close to Christmas Day 1959, and drilled the fourth well early in 1960 and tried to make a producer by putting on a pump and air compressor and finally moved his rig off of the lease about May 1, 1960; that he saw Mr. Mitchell a number of times on the lease trying to get production one way or the other.

N. G. Hawkins testified that he was acquainted with the Brockenbush lease and knew Mitchell, and had a lease north of the Brockenbush lease and saw Mitchell working on the lease from December 1st, 1960 to June 1st, 1961. There were other witnesses who testified in a similar manner and related facts similar to the above

named witnesses and there is no need to set such out.

On June 1, 1961, appellees wrote the appellant advising him that the lease had lapsed due to the fact that there has been a failure to pay rentals and that the lease had not been produced and demanded a release from appellant.

On June 15, 1961, attorneys for appellees wrote a purchaser of the oil and advised it not to pay any proceeds of the oil run on the lease until it, the purchasing company, had a division order executed by each of the interested parties. The net receipt of the purchase in the sum of $236.95 was placed in escrow.

As said in Wisdom v. Minchen et al., Tex.Civ.App., 154 S.W.2d 330, error ref.

"In Morgan v. Houston Oil Company, Tex.Civ.App., 84 S.W.2d 312, 314, it was held: 'It is well settled that when a lessor determines to forfeit or cancel an oil and gas lease, and puts the lessee on notice thereof, he cannot complain if the latter suspends operations under the contract, pending the determination of the asserted right of the lessor to forfeit or cancel. (cases cited)'. The owners of the working interest were not bound therefore to continue after such notice of forfeiture to develop the lease, and the lease will not be held to have expired because they did not continue such development."

We do not believe that appellees discharged the burden of proof to establish the lack of production and also the lack of drilling operations in good faith. 31A Tex. Jur., para. 209, p. 378. Morrison et ux. v. Swaim et al., Tex.Civ.App., 220 S.W.2d, 493, er. ref.; Clark v. Holchak, 152 Tex. 26, 254 S.W.2d 101.

In the recent case of Skelly Oil Company v. Archer, Tex., 356 S.W.2d 774, our Supreme Court has said:

"On retrial the burden will be on the Archers to prove that Skelly was not making a profit from operation of the well. If they fail to produce evidence which establishes that fact as a matter of law or fail to obtain a fact finding, supported by evidence, to that effect, the lease should not be terminated. If, on the other hand, the evidence establishes as a matter of law that Skelly was not making a profit from the well or if there is a fact finding, supported by evidence, to that effect, the lease should yet not be terminated unless the evidence establishes as a matter of law or the Archers obtain a fact finding, supported by evidence, that a reasonably prudent operator would not have continued to operate the well under the circumstances."

The judgment of the Trial Court is reversed and judgment is here rendered for appellant declaring: the lease to be in full force and effect.

Reversed and rendered.