**Willis J. HOYT, Appellee,**

v.

**CONTINENTAL OIL COMPANY, King Resources Company and Aladdin Petroleum Corporation, Appellants.**

**No. 53860.**

Supreme Court of Oklahoma.

Jan. 8, 1980.

Rehearings Denied March 3, 1980.

**18.** *Fields v. Volkswagen,* ·555 P.2d 48 (Okl. 1976).

John R. Robertson, Jr., James W. McCall, George, Kenan, Robertson & Lindsey, Oklahoma City, for appellants.

George S. Corbyn, Jr., Walker, Walker & Corbyn, Oklahoma City, Tom J. Ruble, Taloga, for appellee.

HARGRAVE, Justice:

This action was brought originally in the District Court of Dewey County, Oklahoma, praying for the cancellation of an oil and gas lease to Section 27, T18N, R17W, in addition to damages for failure to release that prevented plaintiff's releasing the premises and receiving a bonus therefor in addition to acquiring a commercial oil and gas well on the property. Plaintiff moved for partial summary judgment on the cancellation issue and that motion was granted on September 13, 1978. The trial court certified the order sustaining the motion for partial summary judgment on the 23rd day of May 1979. The petition for certiorari to review the interlocutory order was timely filed within thirty days of certification. This Court has previously consolidated this action with its companion case under the number 53,860 and Writ of Certiorari is granted herewith.

The stage was set for this cancellation when on November 5, 1976, the plaintiff, Willis J. Hoyt, made written demand for a release or for the further development and the completion of an offsetting well. The defendants responded by informing plaintiff that they were in the process of negotiating a new gas purchase contract at a higher price while they studied a completion attempt in the Cottage Grove formation which was not completed at that time on the Hoyt well. Half a year later the defendants did complete a gas purchase contract for the Cottage Grove formation at a price of more than twice that then obtaining for the then producing Morrow.

The plaintiff alleged the lease terminated under its own terms by operation of the habendum clause and the cessation of production clause. The cessation of production clause specifies: "If after expiration of the primary term . . . production . . shall cease . . . [the] lease shall not terminate provided . . . lessee resumes operations for drilling . . . within sixty days." The habendum clause specifies the lease term as 10 years and so long thereafter as oil and gas is produced or can be produced.

By affidavit plaintiff alleged production in paying quantities had not been obtained for a period of fourteen months and that the loss therefrom was over a hundred dollars a month (averaging $290/mo), save the first. The last two of these months represent time after the filing of the petition in this action and does not constitute non-productive time for the purpose of this action since the filing of this proceeding puts the defendants' title at issue and relieves him of these covenants until determination is made that title to the lease does indeed rest with him. *Jones v. Moore, 338 P.2d 872, (Okl.1959).*

The defendant appellants contend summary judgment not proper because, first, there are at least two fact issues remaining unresolved which require a trial. The first is whether or not the Hoyt well ceased production for a period sufficient to actuate the cessation of production clause. Second, was the Hoyt well capable of production sufficient to satisfy the habendum clause.

During the time period under consideration the questioned well did not completely cease producing hydrocarbons. Appellants contend the term "production" when used in the cessation of production clause is not as a matter of law properly construed to mean production in paying quantities as it is held to mean when found in the habendum clause.

Under the habendum clause cessation of production is argued not to have occurred because there exists a formation in the Hoyt well capable of production of oil and gas although the well was never completed

or tested to that formation (the Cottage Grove). Defendants contend their effort to negotiate a gas purchase contract for this additional formation satisfies the requirement for diligent efforts to obtain a market for gas once discovered and suffices to perpetuate the lease.

The appellee states the lease has expired and such fact is established as a matter of law by lessee's failure to retain production in paying quantities after the primary term under both the cessation of production clause and the habendum clause. The appellee additionally denies the lease was extended by virtue of the shut-in gas well provisions because the evidence is uncontradicted that there had been no completion or testing of the second formation, the Cottage Grove.

■ Appellants' contention is that cessation of production as that term is used in the cessation of production clause refers to total cessation of production and cannot be held to refer to cessation of production in paying quantities as the term is unerringly interpreted when the word production appears in the habendum clause. This jurisdiction is committed to the principle that production means production in paying quantities in Oklahoma when the term appears in the habendum clause of an oil and gas lease. *State v. Carter Oil Co., 336 P.2d 1086 (Okl.1959).*

■ The cessation of production clause considered here states: "If, after the expiration of the primary term . . . production . . . shall cease from any cause . . . ." After the primary term, the effect of the cessation of production clause is to modify the habendum clause and to extend or preserve the lease while the lessee resumes operations designed to restore production. If the lessee fails to resume operations within the 60-day period provided in this clause neither the cessation of production clause or the habendum clause is satisfied and the lease terminates upon the expiration of the given time period. *McQueen v. Sun Oil Co., 213 F.2d 889, 3 O. & G.R. 1855 (6 Cir. 1954).* If, as in the situation before us, production does not

cease entirely but does cease to be in paying quantities, there may or may not be such a cessation of production for purposes of the cessation of production clause, depending upon whether or not the effect is to modify the habendum or drilling clause. If the primary term has not expired so that the effect of the cessation of production clause is to modify the drilling clause there is no cessation of production unless that production ceases entirely. *Roberts v. Corum, 236 Miss. 809, 112 So.2d 550, 10 O. & G.R. 779 (1959), Long v. Magnolia Pet. Co., 166 Neb. 410, 89 N.W.2d 245, 9 O. & G.R. 41 (1958),* contra, *Mitchell v. Brockenbush, 363 S.W.2d 166, 17 O. & G.R. 824 (Tex.Civ.App.1962).* The result is contrary where, as here, the primary term has expired and the effect of the provision is to modify the habendum clause. In such a situation there is a cessation of production if the habendum clause requires production in paying quantities and such requirement is not met. *Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684 (1959), Wilson v. Talbert, 259 Ark. 535, 535 S.W.2d 807 (1976), Wainright v. Wainright, 359 S.W.2d 628 (Tex.1962), Sullivan & Garnett v. James, 308 S.W.2d 891, 8 O. & G.R. 1141 (Tex.Civ.App.1957).* On this point the record clearly demonstrates production in paying quantities was not obtained for an uninterrupted period far in excess of the 60-day provision in the lease executed by the parties. Where the parties have bargained for and agreed on a time period for a temporary cessation clause that provision will control over the common law doctrine of temporary cessation allowing a "reasonable time" for resumption of drilling operations. *Sunray DX Oil Co. v. Texaco, 417 S.W.2d 424 (Tex.Civ.App.1967), Hall v. McWilliams, 404 S.W.2d 606 (Tex.Civ.App.1966), Lynch v. Southern Coast, 442 S.W.2d 804 (Tex.Civ. App.1969), Haby v. Stanolind Oil Co., 228 F.2d 298 (5th Cir. 1955), Greer v. Salmon, 82 N.M. 245, 479 P.2d 294 (1970), Wilson v. Talbert, 535 S.W.2d 807 (Ark.1976).* As the New Mexico Court noted on this subject in *Greer v. Salmon, supra,* quoting from Hazlett "Effect of Temporary Cessation of Production on Leases and Term Royalties",

Southwestern Legal Foundation, Tenth Annual Institute on Oil and Gas Law Taxation, 201 at 248:

"The courts have been unanimous in construing this clause as meaning that cessation of production for longer than the stipulated period cannot be considered 'temporary'. In effect, the provision is construed as giving the lessee a fixed period of time within which to resume production or commence additional drilling or reworking operations in order to avoid termination of the lease; the period of grace having been fixed by agreement of the parties, it cannot be extended by the courts, no matter what the circumstances or cause of the cessation."

In the journal entry awarding plaintiff's partial summary judgment, the Trial Court's last two findings are: 1. The lease in question has a temporary cessation clause allowing a 60-day cessation of production. 2. The defendant made no effort to resume operations within the 60-day period. On this basis the Trial Court declared the lease terminated. Included in the findings of fact, the Trial Court noted that expenses for re-completion had been approved by the defendants and that defendants had obtained a higher gas price in a contract for sale which would make it profitable for the defendants to re-complete. The remaining inquiry is whether or not such activities fulfill the resumption of operations requirement of the cessation of production clause. The lease provides expressly what is required for its perpetuation, and it is "resum[ption of] operations for drilling a well within 60 days from such cessation . . ." Sales contract negotiations and internal corporate authorization to rework do not constitute a resumption of drilling operations as that phrase is clearly referable to on-site drilling and negotiations preparatory to that required activity will not save the lease.

"The literal provisions of the clause in question will govern what type of operation must be commenced or resumed. It may be limited in application to a resumption or commencement of drilling, or it may be less restrictive and apply to reworking and other operations. If the clause specifically provides for the resumption or commencement of drilling, no other operation will satisfy the clause." *Kuntz, Oil & Gas § 47.5 Vol. 4, p. 134 (1972).*

The activities noted above do not constitute evidence of resumption of operations and as offered to not disclose a material fact that would render summary judgment improper.

 The defendant contends additionally that the lease was held as a shut-in gas well, reasoning that the Cottage Grove formation should be considered a shut-in gas formation. This Court has been unable to locate a single instance where a lease was held under a shut-in gas clause when the formation claimed to be shut in had not been reduced to the lessee's dominion and control and proved by completion and testing to be a commercial gas discovery, which is in keeping with the genesis of the shut-in gas well doctrine as it arose from the finding that the habendum clause of the typical lease is satisfied by the production of gas, and in the absence of an express requirement in the lease to market, any covenant on the part of the lessee to market can only be an implied one, in which instance the lessee has a reasonable time after completion of the well to market. *McVickers v. Horn, Robinson & Nathan, 322 P.2d 410 (Okl.1958).* As said in *State v. Carter Oil Co., supra,* the condition precedent to the vesting of a limited estate in the land covered by the leases is the completion of an oil and gas well in paying quantities. After that occurs then the lessee will retain his estate while he makes a diligent effort to obtain a market. The shut-in gas well doctrine has no application in instances where there has not been completion of a gas well capable of production in paying quantities. The authorities cited by appellant all deal with factual situations disclosing that without exception, the wells under consideration had been completed, tested and demonstrated to be commercial producers capable of producing in paying quantities. Those cases are: *Gard v. Kaiser, 582 P.2d 1311 (Okl.1978), Flag Oil Co. v. King Resources*

Co., 494 P.2d 322 (Okl.1972), Cox v. Gulf Oil Corp., 301 F.2d 122 (10 Cir. 1962).

The trial court correctly granted partial summary judgment as there is no dispute over the facts material to the plaintiffs claim that the lease in question has terminated under the 60-day cessation of production clause.

JURISDICTION OVER WRIT OF CERTIORARI TO REVIEW CERTIFIED INTERLOCUTORY ORDER GRANTED.

PARTIAL SUMMARY JUDGMENT FOR PLAINTIFF AFFIRMED.

CAUSE REMANDED FOR FURTHER PROCEEDINGS.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, SIMMS and DOOLIN, JJ., concur.

OPALA, J., dissents.