Hugh M. FRENCH and Helen French; Mary Ione Cutter and Paul Cutter; Barbara L. Tapp and Robert E. Tapp; Rosemary Ann Hood and Thomas C. Hood; Steven Ted Hood and Gina Hood; Marjorie K. Holler; Winifred M. Hawkins; Don Dale and Lovina B. Dale; Carl H. Cline and Faye Cline; Gladys Cline, individually and as attorney in fact for Sanders B. Cline; Joanne J. Twombley Park; David Long Cattle Co., Inc.; and Hubert K. Elrod, **Appellees,**

v.

TENNECO OIL COMPANY, a corporation; Mesa Petroleum Company, a corporation; Tema Oil Company, a general partnership, composed of Tenneco Oil Company, a corporation and Mesa Petroleum Company, a corporation; Multistate Oil Properties, N.V., a corporation; Russell T. Lund Oil Trust: Joseph Gruss Oil Corporation, a corporation, Herman Kahn; Dr. John A. Nilsen; Allan G. McCulloch; Lubrication Engineers, Inc., a corporation, and Trinity Resources, Inc., a corporation, **Appellants.**

No. 56312.

Supreme Court of Oklahoma.

May 20, 1986.

As Corrected on Denial of Rehearing Sept. 25, 1986.

Pat Long, Cultin, Morgan, Britain & White, Amarillo, Tex., David K. Petty, P.C., Guymon, for appellees.

H.B. Watson, Jr., Richard K. Books, Watson, McKenzie & Moricoli, Oklahoma City, for appellants.

HARGRAVE, Justice.

This appeal is brought by Tenneco Oil Company and other corporations and individuals as shown in the caption, from a summary judgment issued in the District Court of Cimarron County, Oklahoma, cancelling seven oil and gas leases covering Section 14, Township 2 North, Range 8 East of the Cimarron Meridian.

The leases in question were granted in 1974 or prior years to Shenandoah Oil Corporation and have subsequently been transferred to the defendants, Tenneco et al. Production was obtained within the primary term from one well, the French-Belford No. 1. All seven leases are held by this well in a single drilling and spacing unit. The lease contains the following provision:

"If, after the expiration of the primary term of the lease, production on the

leased premises shall cease from any cause, this lease shall not terminate provided lessee resumes operations for drilling a well within sixty days from such cessation, and this lease shall remain in full force during the prosecution of such operations, and, if production results therefrom, then as long as production continues."

Plaintiffs plead that in the year 1979 no gas or oil production was obtained from this single well from and including May to October 1, as well as December of 1979 and January of 1980, as reflected in reports to the Corporation Commission. The petition then alleged the failure to produce occurred outside of the primary term and operations for drilling were not commenced within 60 days. Therefore, the leases have expired under their own terms and plaintiffs prayed for an order cancelling these leases.

Plaintiffs filed a request for admission of facts from defendants requesting admission of the truth of the above stated fact of no production from the unit from May through September, and that fact was admitted by the defendants. Thereupon, plaintiffs filed a motion for summary judgment. Thereafter Tenneco submitted an affidavit executed by an employee of the corporation attesting to the fact that beginning on May 7, 1979, various procedures were undertaken to "enhance the production of the French-Belford No. 1." These procedures included swabbing the well, blowing the well to the atmosphere, acidizing, injecting Dowell Versene, and pulling tubing, reperforating and sand fracturing. The affidavit additionally states that on August 23, 1980, Tenneco was notified by one of the plaintiffs that plaintiffs claimed that title to the leasehold had vested in them.

The trial court granted summary judgment to the plaintiffs and held the leases to be cancelled. The cause was appealed and on appeal was assigned to the Court of Appeals, Division II. Appellants sought and have been granted a writ of certiorari for the purpose of examination of the ef-

fect of *Hoyt v. Continental Oil Co.*, 606 P.2d 560 (Okl.1980), as well as correcting certain statements of fact upon which the prior opinion turned.

Appellant's third proposition of error is correct although not dispositive of the issues raised on appeal. In this proposition, appellants contend that under the doctrine of obstruction, a lessee may suspend operations under the terms of a lease contract pending determination of a communicated assertion that the lease is no longer valid and subsisting, as explained in *Allen v. Palmer*, 201 Okl. 673, 209 P.2d 502 (1948); *Elsey v. Wagner*, 199 Okl. 449, 183 P.2d 829 (1946), and *Simons v. McDaniel*, 154 Okl. 168, 7 P.2d 419 (1932). The letter written by David Long on August 23, 1979, directly places title to the lease in question in that it asserts defendants' lease had expired and demands a release of the questioned lease.

However, the materials included in the record unanimously indicate that the lease had not produced in paying quantities (or any quantities at all) from April 23, 1979 through September. The period from April 23 through the point at which the title to the lease was questioned, August 23, 1979, is four months.

The remaining propositions of error focus upon the tenets of *Hoyt v. Continental Oil Co., supra,* and are answered by an examination of that case. Appellant contends the lease did not terminate inasmuch as Tenneco resumed operations under the lease within sixty days of cessation of production as provided in the lease contract. Additionally, appellants contend that a determination of cessation of production in paying quantities is dependent upon the selection of a proper time frame within which to base that calculation. Intertwined with these points is the contention that the 60-day period for resumption of operations specified in the lease does not become activated until the expiration of a reasonable period of time, thus giving the lessee a reasonable time to resume operations plus 60 days. Appellants' contention that a 60-day cessation clause is time in

addition to a reasonable time for resumption of drilling is not well taken in light of the express language of *Hoyt v. Continental Oil, supra,* at p. 563:

"Where the parties have bargained for and agreed on a time period for a temporary cessation clause, that provision will control *over* the common law doctrine of temporary cessation allowing a 'reasonable time' for resumption of drilling operations." (Citations omitted, emphasis added)

The quotation appearing immediately after this language above quoted refutes the appellants' contention that the resumption of drilling clause here considered would require a new well to be drilled every time production ceases for any cause even where that cessation is easily remedied. Appellant is correct in stating such an interpretation is unreasonable but such conclusion is not necessitated by *Hoyt's* holding that a bargained-for time period in a cessation of production clause controls over the common law doctrine of temporary cessation. *Hoyt, supra,* at 563 and 564, quotes *Greer v. Salmon,* 82 N.M. 245, 479 P.2d 294 (1970)[1] as follows:

"The courts have been unanimous in construing this clause as meaning that cessation of production for longer than the stipulated period cannot be considered 'temporary'. In effect, the provision is construed as giving the lessee a fixed period of time within which to *resume production or commence additional drilling* or reworking operations in order to avoid termination of the lease; the period of grace having been fixed by agreement of the parties, it cannot be extended by the courts, no matter what the circumstances or cause of the cessation." (Emphasis added)

As is illustrated by the emphasized portion of the preceding quotation, the lessee has, under the contract here considered, 60 days to restore production in paying quantities by means the lessee determines to be advantageous under the circumstances. Restoration of production in paying quantities within that period obviates the need to drill, but to preserve the lease, where that production is not restored within the specified period, drilling operations must be commenced within sixty days.

Appellants contend that the on-site activities undertaken preserve the lease although production was not achieved within the sixty day time specified in the contract. Appellants concede that drilling was not commenced within sixty days in that the itemization of on-site activites relate only to reworking and conditioning the well. Our examination of the record discloses no issue that operations to drill a well were instituted within the sixty day period. Appellants' contention that reworking operations satisfy the clause in question in this appeal ("provided the lessee resumes operations for drilling a well within 60 days") has been answered in the negative in *Hoyt, supra,* at p. 564, quoting with approval Kuntz, Oil & Gas § 47.5 Vol. 4, p. 134 (1972):

"The literal provisions of the clause in question will govern what type of operation must be commenced or resumed. It may be limited in application to a resumption of commencement of drilling, or it may be less restrictive and apply to reworking and other operations. *If the clause specifically provides for the resumption or commencement of drilling, no other operation* will satisfy the clause." (Emphasis added)

It is determined the doctrine of obstruction, see *Jones v. Moore,* 338 P.2d 872 (Okl.1959), does not suspend the lessees' obligation to drill under the facts of this case and the lease under consideration expired of its own terms because the lease had expired after the sixty day period and the notice demanding a release and claiming title was not sent until 120 days expired.

---

**1.** In turn quoting from Hazlett "Effect of Temporary Cessation of Production on Leases and Term Royalties", Southwestern Legal Foundation, Tenth Annual Institute on Oil and Gas Law Taxation, 201 at 248.

Opinion of the Court of Appeals VACATED; judgment of the trial court is AFFIRMED.

SIMMS, C.J., DOOLIN, V.C.J., and LAVENDER, WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA and HODGES JJ., dissents.