**H. Stephen GRACE, La Colombe d'Or Development Co., & Dane Development Inc., Appellants,**

v.

**Stephen N. ZIMMERMAN, Appellee.**

No. C14–92–00360–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 25, 1993.

Rehearing Denied May 6, 1993.

Donna C. Kline, Houston, for appellants.

Henry P. Giessel, Alice M. Giessel, T. Lynne Eckels, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

BOWERS, Justice.

This is an appeal from an order granting appellee's motion for summary judgment. Appellants bring six points of error, four of which challenge the trial court's grant of summary judgment. Appellants also chal-

lenge the trial court's refusal to grant appellants' motion for permission to conduct discovery and appellants' motion for partial summary judgment. We affirm.

Appellee originally owned the lot containing the restaurant, La Colombe d'Or. Robert Erwin owned the rest of the block. In 1982, appellee applied for sufficient sewer capacity for a large high-rise condominium on the entire block. He received from the City of Houston a letter granting him a commitment in June 1982. This letter stated that, within twelve months of the date of the letter, the "project must be under construction or a sewer connection charge must be paid." The letter further stated that "[i]f this project is not under construction within twelve months, a new commitment must be secured." Soon thereafter, appellee and Erwin transferred their property and the sewer capacity rights to the Westhaven Corporation. Westhaven Corporation was to develop the property with financing from Mainland Savings.

In November 1982, Erwin and Westhaven Corporation received a letter from the City issuing a commitment for sewer capacity to the property and noting that a sewer connection charge of $560.00 had been paid. The letter stated that Erwin would have to secure a new commitment if the project was not under construction within twelve months. Finally, the letter advised Erwin of a proposed city ordinance requiring additional charges for connection to the City's wastewater system. If passed, this ordinance might require the payment of additional fees before the issuance of a building permit. The City passed this ordinance in May 1983.

The condominium development never occurred. Mainland Savings acquired the real estate through foreclosure. Appellants contend that Mainland hired them to continue development of the project. The record contains documents indicating that appellants performed some development tasks. Mainland Savings subsequently failed and the FSLIC took over its assets.

In 1987, appellee repurchased the property from the FSLIC. In the earnest money contract, the FSLIC agreed that "said prop-

erty will be sold with all existing sewer permits and all architectural plans and specifications for the proposed La Colombe d'Or Condominium." Next to this statement were the handwritten words, "if available." The FSLIC contacted the City and learned that one tap fee had been paid by Erwin and that "wastewater capacity [had] not been reserved for development on this site."

Appellee then met with Henry Gregory, Manager of the City Waste Load Control Branch. The City asked appellee to submit an application for a wastewater capacity reservation within 30 days after closing on the property. The City further stated, "A one time opportunity will be given to pay the Capital Recovery Charge for the wastewater capacity, with payment due within six (6) months of our letter." Appellee received a deed to the property in December 1987. In January 1988, appellee sent the City his application for wastewater capacity reservation and officially asked for an opportunity to pay the Capital Recovery Charge.

Appellant Grace advised appellee that the permits were the property of La Colombe d'Or Development, Inc. and that only it had the right to pay the Capital Recovery Charge to the City. Grace offered to sell appellee the sewer permits for $125,000.00. Appellee's attorney responded to this letter, advising Grace that appellee, as the owner of the property, had the right to obtain the wastewater capacity by payment of the capital recovery fee and that La Colombe d'Or Development, Inc. had no rights to the capacity units.

In March 1988, Grace wrote to the City, advising of the offer to sell the capacity to appellee and asking the City to refrain from taking any capital recovery fee payment from appellee. In August 1988, the City advised Grace that the Wastewater Capacity Reservation would be issued only to the fee simple owner of the property, appellee. Grace responded that appellee had earlier assigned his rights to the capacity and that appellee's repurchase of the property from the FSLIC did not include the wastewater capacity assignment. The

City replied that the commitment issued in 1982 was not issued in perpetuity, but was valid for one year, requiring renewal. The City further stated that the 1983 ordinance required the the payment of a capital recovery charge by April 2, 1984, to transform the temporary commitment into a permanent one. Because this was not done, the City concluded that the commitment had expired. The City also advised Grace that appellee had paid the capital recovery charge and secured sufficient capacity for the originally planned condominium development.

Appellants then filed suit against appellee, alleging interference with a business expectancy, interference with a property right, conversion, constructive fraud, and breach of the duty of good faith. Appellants further charged that appellee's conduct was inconsistent with the express or implied terms of the contracts by which he conveyed away the permits in question. The trial court granted appellee's motion for summary judgment and denied appellants' motion for partial summary judgment.

In point of error one, appellants claim the trial court erred in granting appellee's motion for summary judgment because appellee's central claim, that the sewer capacity allocation had expired, is irrelevant as a matter of law to appellants' causes of action. Under this point, appellants contend that appellee's motion for summary judgment did not negate a single element of appellants' causes of action.

Because this is an appeal from a summary judgment, we must determine whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of appellants' causes of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). In deciding whether or not there is a disputed material fact issue precluding summary judgment, we must accept as true all evidence favorable to the non-movant, indulging reasonable inferences and resolving doubts in the non-movant's favor. *Nixon*

*v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

In his motion for summary judgment, appellee addressed interference with a business expectancy, breach of contract, interference with a property right, conversion, actual or constructive fraud, breach of the duty of good faith and fair dealing, and inconsistent conduct with expressed or implied terms of a contract. As to interference with a business expectancy, appellee contended that there were no material fact issues as to any of the required elements.

The elements of this tort are:
(1) a reasonable probability that the parties would have entered into a contractual relationship;
(2) an intentional and malicious act by the defendant that prevented the relationship from occurring, with the purpose of harming plaintiff;
(3) the defendant lacked privilege or justification to do the act; and
(3) actual harm or damage resulted from the defendant's interference.
*Exxon Corp. v. Allsup*, 808 S.W.2d 648, 659 (Tex.App.—Corpus Christi 1991, writ denied).

Appellee contends that the temporary wastewater capacity commitment issued in 1982 expired and thus, appellants had no interest in the capacity that could support a cause of action for interference with a business expectancy. Appellants counter that the capacity allocation had not expired, but even if it did, appellants argue that this did not resolve all fact issues. We disagree with appellants' contention.

The original capacity commitment letter required the owner to initiate construction within twelve months of the date of the letter or pay a sewer connection charge. Because construction did not begin within twelve months, a sewer connection charge was paid in 1982. A new ordinance was passed in 1983, however, transforming commitments issued before May 3, 1983 into temporary reservations. Holders of temporary reservations could convert these into a permanent reservation by April 2, 1984 by submitting an application dem-

onstrating they had paid the sewer connection charge and by paying part or all of the capital recovery charge, as required under the terms of the ordinance. Gregory testified that if the project had been completed before April 2, 1984, no capital recovery charge would have been due.

Because the commitment issued for this property was not converted to a permanent reservation by April 2, 1984, the City advised appellant, Stephen Grace, that the commitment expired and "neither Mr. Zimmerman, FSLIC, Mainland Savings nor LCD Development, Inc. owned the wastewater capacity." The City allowed appellee, as the property owner, to re-apply for a wastewater capacity reservation.

Consequently, the summary judgment proof indicates that the 1982 commitment had expired as of April 2, 1984. If appellants were the successors in interest to Westhaven Corporation's rights in the 1982 wastewater capacity commitment, which is not conclusively established by the record, they did not attempt to convert that interest into a permanent reservation as required by the ordinance. Once the commitment expired, appellants had no interest with which appellee could tortiously interfere. The City's decision to allow appellee, as the property owner, to pay the capital recovery charge and resuscitate the original reservation of capacity does not indicate that appellee maliciously interfered with any business expectancy of appellants. We find no error by the trial court in granting summary judgment in favor of appellee as to the tortious interference claim.

■■■ Appellants also alleged conversion. Conversion is the wrongful exercise of dominion and control over the property of another inconsistent with the owner's rights. *Beam v. Voss,* 568 S.W.2d 413, 420 (Tex.Civ.App.—San Antonio 1978, no writ). Appellants argue that appellee's 1987 use of the letters from the City issuing the original 1982 commitment constitutes conversion of appellants' rights in the capacity. As discussed above, appellants had no rights in the capacity after April 2, 1984 because the commitment had expired.

Thus, appellee's use of these letters did not constitute conversion and the trial court properly granted summary judgment as to this claim.

■■■ Appellants further alleged that appellee breached a duty of good faith. Appellants cite the Uniform Commercial Code as support for the imposition of a duty of good faith. Section 1.203 states that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement." TEX.BUS. & COM. CODE ANN. § 1.203 (Vernon 1968). Appellants assert that the UCC applies to the facts of this case because the assignment of wastewater capacity by appellee to Westhaven was a sale of goods. "Goods" are defined as things "movable at the time of identification to the contract...." TEX. BUS. & COM.CODE ANN. § 2.105(a) (Vernon 1968).

Appellee contends that the sewer rights were not goods and maintains that such rights are similar to the transmission of electricity which the court held were not goods in *Navarro County Elec. Cooperative, Inc. v. Prince,* 640 S.W.2d 398, 400 (Tex.App.—Waco 1982, no writ). Relying on cases from other jurisdictions holding that the sale of electricity is the rendition of a service and not a sale of goods, the *Prince* court held that the transmission of electricity along high tension power lines that eventually lead into a transformer is not goods. *Id.*

We find the transmission of electricity analogous to sewer services. Appellee sold Westhaven Corporation his rights to a temporary reservation of sewer services. We find that these rights were not goods within the meaning of the UCC; therefore, we find the UCC inapplicable.

We turn next to appellants' argument that a special relationship existed between the parties. In support of this argument, appellants cite *Fitz–Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256 (1951) and *Baxter v. Williams,* 544 S.W.2d 192 (Tex.Civ. App.—Waco 1976, writ ref'd n.r.e.). These cases involve parties seeking to impose a constructive trust either upon a partner,

*Baxter*, 544 S.W.2d at 194, or a joint venturer. *Fitz–Gerald*, 237 S.W.2d at 264.

Appellants allege that appellee negotiated with appellants to become partners on the project, but the record contains no indication of this. We find no evidence that appellee has ever had any relationship with appellants such that a duty of good faith existed. Therefore, we find no error by the trial court in granting summary judgment on the claim of breach of duty of good faith.

▮▮▮ Appellants also alleged that appellee holds the sewer capacity allocation in constructive trust. A constructive trust is available as a remedy for breach of a fiduciary or confidential relationship or for actual fraud. *Meadows v. Bierschwale*, 516 S.W.2d 125, 128 (Tex.1974). Appellants did not allege actual fraud. Furthermore, we find no evidence raising an issue as to the existence of a confidential relationship between the parties. Indeed, case law regarding constructive trusts holds that the confidential relationship between the parties must exist apart from, and prior to, the agreement made the basis of the suit. *Consolidated Gas & Equipment Co. v. Thompson*, 405 S.W.2d 333, 336 (Tex.1966). The record reveals no facts indicating a relationship between the parties apart from this disagreement over who has rights to the sewer capacity. Thus, we find that no fact issues exist regarding this claim.

▮▮▮ Finally, appellants assert that appellee breached his contractual duties including his covenant to defend title. In the assignment of utility capacity from appellee to Westhaven, appellee agreed to transfer all right, title and interest in the capacity. Again, we find that the expiration of the commitment on April 2, 1984 is determinative of this claim. Appellee assigned his interest in the commitment to Westhaven in 1982 and from that time forward the assignees were responsible for maintaining the effectiveness of this reservation and of converting it to a permanent reservation by April 2, 1984. Once the reservation expired, no party had an interest in the reservation. Thus, we find that no fact issues

exist as to this claim. We overrule point of error one.

In point of error two, appellants contend the evidence raised several issues of fact on essential points. In particular, appellants maintain that fact issues exist as to the following: (1) the facts of succession of title, including appellee's duties under the various documents; (2) appellants' interest in the wastewater allocation; and (3) appellee's conduct in obtaining the allocation in 1987–88. We agree that the evidence does not conclusively establish the succession of interest in the reservation. The evidence does, however, establish that any interest appellants' may have owned expired on April 2, 1984 when the temporary reservation was not converted to a permanent reservation. Because the commitment expired, appellants had no interest and the succession of title, including any alleged duties owed by appellee, are irrelevant. Because we find no material fact issues raised by the evidence, we overrule point of error two.

In point of error three, appellants contend the trial court erred in reconsidering the first denial of appellee's motion for summary judgment. On September 9, 1991, the trial judge granted appellee's motion for summary judgment. On September 20, 1991, the judge set aside the order. Appellee later filed a second amended motion for summary judgment and the trial court granted this on December 17, 1991.

Appellants claim the trial court erred in granting appellee's motion after the prior denial of essentially the same motion. In support of this claim, appellants cite the doctrine of law of the case which precludes subsequent attacks on a court's rulings during the pendency of a case. Citing *Loumar, Inc. v. Smith*, 698 F.2d 759 (5th Cir. 1983) and *Kropp v. Prather*, 526 S.W.2d 283 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.), appellants state that the "doctrine of law of the case should preclude subsequent attacks on a court's rulings, during the pendency of the case." Appellee counters that appellants misunderstand and misapply this doctrine. We agree.

The doctrine of law of the case is the "principle under which the determination of law questions will generally be held to govern the case throughout all of its subsequent stages where such determination has already been made on a prior appeal to a court of last resort." *Kropp*, 526 S.W.2d at 285. The doctrine applies only to questions of law presented during successive appeals where the facts in the second appeal are substantially the same as in the first appeal and where the issues presented in the second appeal are identical to questions already determined in the prior appeal. *Id.* Thus, the doctrine applies to issues presented in successive appeals and not to issues raised more than once in the trial court. Furthermore, a trial court has the discretion to reconsider its prior order denying a motion for summary judgment and to rescind that order and enter an order granting the motion. *Bennett v. State Nat'l Bank*, 623 S.W.2d 719, 721 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). We find no merit in appellants' contention. We overrule point of error three.

In point of error four, appellants claim the trial court erred in failing to strike affidavits submitted by appellee, without which appellants contend the summary judgment cannot stand. Appellants objected to portions of Gregory's testimony and moved to strike the affidavits of Gregory and appellee. Appellants contend Gregory's affidavit was conclusory and involved a conclusion of law on which testimony cannot be given. Appellants contend appellee's affidavit contained hearsay, was self-serving, and that appellee lacked personal knowledge of the ordinance. Furthermore, appellants claim that appellee's testimony about the meaning of the contract between himself and the FSLIC violated the parole evidence rule.

A trial court may grant summary judgment based on the uncontroverted testimonial evidence of an interested witness or expert witness "if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex.R.Civ.P. 166a(c). In his affidavit, Gregory stated his position as Manager of the Wasteload Control Branch of the City and that he had personal knowledge of the facts and statements contained in the affidavit. Gregory described the City's involvement in the issuance of the commitment, the ordinance passed in 1983, and why the original temporary reservation expired. Gregory also recounted the City's involvement in the issuance of a permanent reservation to appellee in 1988.

Appellants argue that Gregory's affidavit contains a legal conclusion regarding the expiration of the commitment. Employees of the City Public Works Department issue utility permits and determine whether there has been compliance with City ordinances and regulations. Thus, we hold that Gregory could describe the City's determination that the original commitment had expired.

Appellants also complain that Gregory could only give opinion testimony regarding the status of the commitment if he were qualified as an expert in that area of the law. Again, we disagree. Gregory stated his qualifications giving him personal knowledge of the facts and of the applicable ordinances. These qualifications were sufficient. We find Gregory's sworn testimony clear, positive, direct, and otherwise credible. We further find the affidavit was based on facts of which Gregory had personal knowledge. Thus, we hold that Gregory's affidavit was legally sufficient to support the trial court's order.

Appellants also challenge appellee's affidavit on the ground that appellee did not have personal knowledge of the facts about which he testified. In his affidavit, appellee described the issuance of the original commitment, his assignment of the rights to Westhaven, his acquisition of the property from the FSLIC, and the City's grant of capacity to him. We find that appellee did have personal knowledge of these facts. We overrule point of error four.

In point of error five, appellants complain the court erred in failing to grant appellants' motion for permission to conduct discovery. Appellants do not offer

a citation to the transcript and we are unable to locate any documentation of the trial court's denial of this motion. Thus, any error in the court's failure to rule on such motion has not been properly preserved. Even if it were properly preserved, however, the denial of a motion for continuance is a matter within the trial court's sound discretion. *Eckman v. Centennial Sav. Bank*, 757 S.W.2d 392, 397 (Tex.App.—Dallas 1988, writ denied). Appellants fail to show that the trial court abused its discretion in denying their motion. Accordingly, we overrule point of error five.

In their final point, appellants contend the court erred in refusing to grant their motion for partial summary judgment. Because we have upheld the summary judgment in favor of appellee, we need not address this point.

We affirm the trial court's order granting summary judgment in favor of appellee.