TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00453-CV






Hellen Reasoner Hutchison, Milburn E. Nutt, and Susan McRae, Appellants



v.



Tex-Lee Drilling & Development Company, Inc., Jimmie Luecke, Willingham Oil & Gas, 


Inc., Russell Willingham, Forrest R. Stewart, Unicorn Oil Corporation,


 L. & R. Drilling Company, Tex-Lee Operating Company, Union Pacific


 Resources Company, and Browning Oil Company, Appellees






FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT


NO. 93V-056, HONORABLE DAN R. BECK, JUDGE PRESIDING 







 Hellen Reasoner Hutchison, Milburn E. Nutt, and Susan McRae appeal from a take-nothing judgment rendered in their suit against appellees Tex-Lee Drilling & Development Company, Inc.,
Jimmie Luecke, Willingham Oil & Gas, Inc., Russell Willingham, Forrest R. Stewart, Unicorn Oil
Corporation, L. & R. Drilling Company, Tex-Lee Operating Company, Union Pacific Resources
Company, and Browning Oil Company. (1) We will affirm the judgment. 


THE CONTROVERSY

 Hutchison, Nutt, and McRae each possessed a one-percent overriding royalty reserved
in their assignment of certain oil and gas leases--the Peters and Miertschin leases--to Rex Fuller. They
also reserved in the assignment a right to re-acquire the leases in the event Fuller elected "to surrender, let
expire, abandon or release all or any of his rights" under the leases. (2) Through a series of transactions
Humble Exploration Company, Inc., acquired the operating interest under the Peters and Miertschin leases
and in 1979 drilled a producing well--the Patrick Lee #1 Well--on the lease acreage. The Luecke
defendants acquired the operating interest and held it in the early 1990s when production had diminished. 
They ceased production from the well in 1992, for a period of sixty days, thereby causing the Peters and
Miertschin leases to expire and extinguishing Hutchison's overriding royalty interest and her right to re-acquire the leases.

 Jaehne and Tex-Lee Drilling & Development Co. acquired in 1991 and 1992 leases on
the same acreage as that described in the Peters and Miertschin leases. Through a series of transactions,
Union Pacific acquired the operating interest under the Jaehne and Tex-Lee leases and in 1994 completed
a horizontal well thereon.

 Hutchison brought various causes of action against the several defendants based upon an
allegation that the Luecke defendants wrongfully stopped production and operations on the Patrick Lee
#1 Well as part of a conspiracy among the defendants that would enable Union Pacific to obtain its working
interest free of Hutchison's royalty interest and right to reacquire the Peters and Miertschin leases. 
Hutchison alleged as well that Union Pacific's actions in that regard constituted a tortious interference with
her reserved contract right to re-acquire those leases.

 Trial was to a jury. Following the close of Hutchison's evidence, the trial judge directed
a verdict in favor of Union Pacific on her claims of conspiracy and tortious interference with contract. At
the conclusion of all the evidence, the judge withdrew from the jury Hutchison's claims for breach of
contract, conversion, and conspiracy. The judge submitted to the jury only Hutchison's action for fraud. 
 The jury failed to find facts necessary to adjudge any appellee liable on that cause of action. Hutchison
appeals from the resulting judgment that she take nothing by her causes of action.


DISCUSSION AND HOLDINGS

 In point of error one, Hutchison asserts the trial judge erred in directing a verdict in favor
of Union Pacific on her claims for conspiracy and tortious interference with contract. (3) To prevail on her
claim for tortious interference, Hutchison was required to prove the existence of a contract subject to
interference. Holloway v. Skinner, 898 S.W.2d 793, 795 (Tex. 1995). Hutchison pleaded that her
contractual rights, and the Luecke defendants' corresponding duties, arose from the instrument assigning
the Peters and Miertschin leases to Fuller. She alleged Union Pacific interfered with this contract by
inducing the Luecke defendants not to perform it. The assignment having been expressly made subject to
the terms of the Peters and Miertschin leases, Hutchison's contract rights are measured by both the
assignment and the leases. See Sunac Petroleum Corp. v. Parkes, 416 S.W.2d 798, 804 (Tex. 1967)
(when lease terminates, overriding royalty created in assignment also terminates). Hutchison's cause of
action for tortious interference thus depends on her establishing that the Peters and Miertschin leases were
in force when Union Pacific allegedly interfered with her contract. See Grace v. Zimmerman, 853
S.W.2d 92, 96 (Tex. App.--Houston [14th Dist.] 1993, no writ) (after contract obligation expires, plaintiff
possesses no interest subject to interference).

 Union Pacific moved for directed verdict on the ground that Hutchison failed to prove the
leases had been maintained in force by continuous production following the primary term. The trial-court
judgment states as a reason for directing a verdict that Hutchison failed to introduce probative evidence on
each element of her claim. Union Pacific is entitled to judgment as a matter of law only if reasonable minds
cannot differ on the issue. A reviewing court must determine if any evidence of probative force exists to
raise a fact issue on Hutchison's claim for tortious interference. We must consider all the evidence in the
light most favorable to Hutchison, disregarding all contrary evidence and inferences. Jones v. Tarrant
Util. Co., 638 S.W.2d 862, 865 (Tex. 1982).

 The habendum clause in the Peters and Miertschin leases extends the leases after the
primary term for as long as oil or gas is produced. Under such a clause, cessation of production after the
primary term results in automatic termination of the lease. Gulf Oil Corp. v. Reid, 337 S.W.2d 267, 269
(Tex. 1960); W. T. Waggoner Estate v. Sigler Oil Co., 19 S.W.2d 27, 28-29 (Tex. 1929). The
production contemplated in the habendum clause is production in "paying quantities." Garcia v. King, 164
S.W.2d 509, 512-13 (Tex. 1942). If a well yields an excess over operating and marketing expenses,
however small the excess, the well produces in paying quantities although it may never repay all costs of
the well and the enterprise as a whole may prove unprofitable. Clifton v. Koontz, 325 S.W.2d 684, 691
(Tex. 1959); Garcia, 164 S.W.2d at 511. A well ceases to produce in paying quantities, however, when
it fails to yield a profit over a reasonable period of time and a reasonably prudent operator would not
continue operation of the well under the circumstances. Skelly Oil Co. v. Archer, 356 S.W.2d 774, 783
(Tex. 1962); Clifton, 325 S.W.2d at 691. To obtain a jury issue on her claim of tortious interference,
Hutchison was required to adduce evidence showing prima facie that at the time of Union Pacific's alleged
interference her assignment was in force because (1) the Patrick Lee #1 Well had yielded a profit over a
reasonable period of time, or (2) a reasonably prudent operator would have continued operation of the well
under the circumstances.

 After Union Pacific agreed to buy certain properties from Luecke, Tex-Lee Operating
Company, and L. & R. Drilling Company, Union Pacific began to search for title defects. By letter dated
April 28, 1992, Union Pacific required the sellers to provide a release of all earlier leases affecting the 414
acres owned by Luecke, which had originally been subject to the Peters lease, or to provide evidence that
Luecke had acquired the Patrick Lee #1 Well. Hutchison claims that in order to satisfy Union Pacific's
demands the Luecke defendants intentionally caused production to cease from the Patrick Lee Well,
thereby extinguishing her interest in the Peters and Miertschin leases. We will assume that any interference
with Hutchison's contractual rights occurred on April 28, 1992.

 The Patrick Lee #1 Well began producing oil during the primary term of the Peters and
Miertschin leases, which expired in 1981. After the primary term, the Patrick Lee #1 Well was the sole
well holding in force the Peters and Miertschin leases. Hutchison adduced evidence of the number of
barrels of oil the well produced each year through 1991 and for the first six months of 1992, when she
claimed the leases were allowed to expire. The figures reflect that in 1981, the well produced 8881 barrels,
just over half its annual production in 1979 and 1980. From 1981 through 1991, production declined
every year but two, ending in 1991 with 1119 barrels. Gerald DuPont, a consultant in petroleum and
chemical engineering, estimated oil prices in the Giddings Field for each month from January 1991 through
October 1995. Two invoices show that Tex-Lee Drilling and Development Company spent $7,526.73
to operate the well in May 1991 and $8,618.83 in June 1991. Hutchison also introduced an exhibit
showing gross income from the well, less oil production taxes, for five months in 1991 and four months in
1992. (4) See Tex. Tax Code Ann. § 202.051 (West 1992) (imposing tax on production of oil).

 In summary, Hutchison introduced evidence showing the following aspects of production
from the Patrick Lee #1 Well following the primary term: (1) the barrels of oil produced through the first
six months of 1992; (2) the average price of a barrel of oil in the field in 1987 (nine dollars) and from
January 1991 through October 1995 (monthly average ranging from a low of $15 to a high of $19); (3)
gross income after production taxes for five months in 1991 and four months in 1992 (see footnote four);
and (4) the operator's expenses in May 1991 ($7,526.73) and June 1991 ($8,618.83). Between 1981
and April 1992 Hutchison's evidence showed the operating expenses for only two months. We believe,
therefore, that her evidence fails to show, prima facie, that the well produced in paying quantities for a
reasonable period of time after the primary term. She introduced no evidence that a reasonably prudent
operator would have continued to operate the well, in the circumstances, notwithstanding its failure to yield
a profit.

 Without evidence that the Patrick Lee #1 Well produced in paying quantities after the
primary term, Hutchison did not prove prima facie that the Peters and Miertschin leases were in force on
April 28, 1992. By failing to prove the leases remained in force, Hutchison necessarily failed to prove that
her rights arising from the assignment were in force at the time of the alleged interference. We therefore
conclude that Hutchison failed to introduce evidence on an essential element of her claim for tortious
interference with contract, namely, that a contract subject to interference existed. E.g., Guynn v. Corpus
Christi Bank & Trust, 589 S.W.2d 764, 770-71 (Tex. Civ. App.--Corpus Christi 1979, writ dism'd). 
The trial court correctly directed a verdict on this cause of action.

 Hutchison's claim for conspiracy fails for the same reason. Hutchison alleged Union Pacific
conspired with the Luecke defendants "for the purpose of defrauding, preventing, hurting, destroying, and
interfering with the ownership of" her overriding royalty interest in the leases and her right to reassign them. 
She contended Union Pacific and the Luecke defendants allowed production to cease on the Patrick Lee
Well, causing the Peters and Miertschin leases to expire in July 1992.

 A civil conspiracy is a combination by two or more persons to accomplish an unlawful
purpose or to accomplish a lawful purpose by unlawful means. Massey v. Armco Steel Co., 652 S.W.2d
932, 934 (Tex. 1983). According to the evidence, the Luecke defendants first became involved with the
Peters and Miertschin leases in May 1991, when Tex-Lee Operating Company provided services and
supplies to Tex-Lee Drilling and Development Company for the Patrick Lee #1 Well. We will assume any
conspiracy developed in May 1991. To the extent Hutchison alleged Union Pacific conspired to destroy
and interfere with her contractual rights, Hutchison failed to show she possessed such contractual rights at
the time of the alleged conspiracy. E.g., Guynn, 589 S.W.2d at 771.

 The gist of a civil conspiracy is the damage resulting from the commission of a wrong that
injures another. Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854,
856 (Tex. 1968). To the extent Hutchison alleged Union Pacific conspired to defraud her of her rights, she
was obliged to prove that one or more unlawful, overt acts were committed toward that end. Massey, 652
S.W.2d at 934. The duty to notify Hutchison that the leases were terminating, so she might reassign them
and preserve her overriding royalty interest, existed only as long as the leases were in force. Without proof
that the leases were in force in May 1991, Hutchison has failed to show the wrongful character of any
agreement to allow them to expire without notifying her.

 Finally, the jury failed to find that any defendant committed fraud against Hutchison. 
Hutchison does not attack this failure to find, and we are bound by it on appeal. Barrington v. Duncan,
162 S.W.2d 1025, 1026 (Tex. Civ. App.-- Galveston 1942), rev'd on other grounds, 169 S.W.2d 462
(Tex. 1943). If Hutchison did not prove that any single defendant defrauded her, she cannot prove that
any two defendants conspired to defraud her. See Merrell v. Fanning & Harper, 597 S.W.2d 945, 953
(Tex. Civ. App.--Tyler 1980, no writ) (if act done by one person cannot give rise to cause of action, same
act cannot give rise to cause of action if done in pursuance of agreement between several persons). We
therefore overrule point of error one.

 In her second point of error, Hutchison asserts the trial court erred in refusing to submit to
the jury questions pertaining to her actions against the Luecke defendants for breach of contract,
conversion, and conspiracy. The trial court erred by refusing to submit questions on these causes of action
if any evidence supported them. Elbaor v. Smith, 845 S.W.2d 240, 243 (Tex. 1992). To determine that
issue, we examine the record for evidence supporting each cause of action, ignoring all evidence and
inferences to the contrary. Id.

 Hutchison's complaint regarding conspiracy is sufficiently treated in our discussion above. 
Hutchison alleged the Luecke defendants breached a contract to pay her overriding royalty and to notify
her that they were allowing the Peters and Miertschin leases to expire. She also alleged the Luecke
defendants exercised wrongful dominion and control over her interest in the oil produced from the leases. 
We will assume any wrongful control over oil produced and any breach of contract to pay overriding
royalty occurred beginning June 1, 1991, when American Oil Partners Operating Company transferred the
leases to Willingham Oil and Gas. We will also assume any failure to notify Hutchison that the leases would
expire occurred on April 29, 1992, when the Patrick Lee Well was shut in.

 Hutchison's cause of action for breach of contract requires proof that a contract existed. 
City of Corpus Christi v. Bayfront Assocs., Ltd., 814 S.W.2d 98, 103 (Tex. Civ. App.--Corpus Christi
1991, writ denied). Having failed to prove the Peters and Miertschin leases remained in effect on the
relevant dates, Hutchison has not shown the Luecke defendants breached any contractual duties. Similarly,
Hutchison has not shown she owned an interest in the oil over which the Luecke defendants allegedly
exercised wrongful control. See Zimmerman, 853 S.W.2d at 96 (once rights expired, plaintiff possessed
no property that could be converted). Without any evidence to show Hutchison possessed contractual or
property rights to be protected, the trial court properly refused to submit to the jury questions on these
causes of action. We overrule point of error two.


 Having overruled both of Hutchison's points of error, we affirm the trial-court judgment.



 

 John Powers, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: November 13, 1997

Do Not Publish
1. Unless necessary to discuss them individually, we will refer to Hutchison, Nutt, and McRae
collectively as "Hutchison." Tex-Lee Operating Company and L. & R. Drilling Company are general
partnerships whose general partners are Tex-Lee Drilling and Development, Inc., and Unicorn Oil
Corporation. Jimmie Luecke and Forrest L. Stewart serve respectively as president of each general
partner. We will refer collectively to all appellees, except Union Pacific Resources Company and
Browning Oil Company, as the "Luecke defendants." The appellees brought counterclaims and cross-claims, none of which are before us on appeal.
2. Hutchison held in her own name the right of reassignment, she, Nutt and McRae having agreed
that Hutchison would exercise the right for the benefit of all three.
3. Union Pacific moves that we take judicial notice of statements Hutchison's counsel made to the
trial court in a different suit against Union Pacific. See Tex. R. Civ. Evid. 201. Because counsel's
statements were not admitted in evidence in the cause on appeal, we overrule the motion. Elwell v. State,
872 S.W.2d 797, 799 (Tex. App.--Dallas 1994, no pet.).
4. Hutchison's exhibit shows the following sums for gross income, oil production taxes, and gross
income after production taxes from the Patrick Lee #1 Well:





Date

I

Gross Income

II

Oil Production Taxes

III

Gross Income After
Production Taxes
June 1991
$3,321.40
$153.11
$3,168.29
July 1991
 3,635.05
 167.55
 3,467.50
August 1991
 3,535.26
 162.95
 3,372.31
September 1991
 2,566.16
 118.67
 2,447.49
October 1991
 980.06
 45.31
 934.75
January 1992
 3,967.31
 183.63
 3,783.68
February 1992
 944.96
 43.74
 901.22
April 1992
 6,723.79
 311.09
 6,412.70
May 1992
 2,579.38
 119.31
 2,460.07


Because the exhibit shows only the amount of oil production taxes and not the amount of operating
expenses associated with the Patrick Lee #1 Well, the exhibit itself is no evidence that the well produced
in paying quantities during the nine months indicated. Although no concise definition of operating expenses
appears to have been articulated, courts have considered the following expenses to qualify as operating
expenses in calculating production in paying quantities: the landowner's share of royalty; labor, marketing,
and repair costs; depreciation on salvable equipment; overhead expenses attributable to the well; and taxes
on the operator's interest. Skelly Oil Co. v. Archer, 356 S.W.2d 774, 781-82 (Tex. 1962); Clifton v.
Koontz, 325 S.W.2d 684, 691, 93 (Tex. 1959); El Paso Natural Gas Co. v. American Petrofina Co.,
733 S.W.2d 541, 548 (Tex. App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.); Persky v. Fist State
Bank, 117 S.W.2d 861, 863 (Tex. Civ. App.--Amarillo 1938, no writ); see Sullivan & Garnett v.
James, 308 S.W.2d 891, 893 (Tex. Civ. App.--San Antonio 1957, writ ref'd n.r.e.); 3 Howard R.
Williams & Charles J. Meyers, Oil & Gas Law § 604.6(b) (1996). Hutchison's evidence that Tex-Lee
Drilling & Development spent $8,618.83 to operate the well in June 1991 shows a loss of $5,450.54,
excluding royalty, on the well for that month. For the remaining eight months, reducing by one-eighth the
figures in column III would account for two elements of expenses, oil production taxes and the landowner's
royalty, but would not show other expenses necessary to a finding that the Patrick Lee #1 Well produced
in paying quantities.



LE="font-size: 10pt"> 3,635.05
 167.55
 3,467.50
August 1991
 3,535.26
 162.95
 3,372.31
September 1991
 2,566.16
 118.67
 2,447.49
October 1991
 980.06
 45.31
 934.75
January 1992
 3,967.31
 183.63
 3,783.68