**D. W. FRANCIS et al., Appellants,**

v.

**Laurice PRITCHETT et al., Appellees.**

**No. 5090.**

Court of Civil Appeals of Texas.

El Paso.

March 30, 1955.

Rehearing Denied April 20, 1955.

Connell Ashley, Hart Johnson, Ft. Stockton, for appellants.

Hadden & Hadden, Ft. Stockton, for appellees.

McGILL, Justice.

This was a suit in the statutory form of trespass to try title, the purpose of which was to cancel an oil and gas lease dated April 24, 1937, executed by Kathleen Hadden, W. A. Hadden, Laurance Berwick Westerman, Laurice Pritchett and Ray M. Pritchett, as lessors, to Cecil H. Lockhart as lessee, covering 186 acres of mineral land in Pecos County. Trial to the court without a jury resulted in a judgment cancelling the lease except as to 20 acres around a shut-in sour gas well which had been brought in as a producer.

The portions of the lease relevant to this appeal are:

"It is agreed that this lease shall remain in force for a term of five years, beginning September 19th, 1937 and as long thereafter as oil or gas, or either of them is produced from said land by the lessee.

"If, at the expiration of Five Years from the date of this lease, oil or gas is not being produced on the leased premises but lessee is then engaged in drilling for oil or gas, then this lease shall continue in force so long as drilling operations are being continuously prosecuted on the leased premises; and drilling operations shall be considered to be continuously prosecuted if not more than sixty (60) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of a subsequent well. If oil or gas shall be discovered and produced in paying quantities from any such well or wells drilled or being drilled at or after the lapse of five years, this lease shall continue in force so long as oil or gas shall be produced from the leased premises.

"It is specially agreed that in the event that oil or gas is produced from said premises and said production shall for any reason cease or terminate, lessee shall have the right at any time within ninety (90) days from the cessation of such production to resume drilling operations in the effort to make said leased premises again produce oil or gas, in which event this lease shall remain in force so long as such operations are continuously prosecuted, as defined in the preceding paragraph, and if they result in production of oil or gas, so long thereafter as oil or gas is produced in paying quantities from the premises.

"In case of cancellation or termination of this lease for any cause, lessee shall have the right to retain under the terms thereof, twenty (20) acres of land around each oil or gas well producing, being worked on, or drilling hereunder (as long as such operations are continued in good faith) such tract to be designated by lessee in as near a square form as practicable."

Gas was being produced at the expiration of five years from the date of the lease, and

by its terms the lease was automatically continued. Two wells were drilled on the lease, the Westerman Well No. 1 and the Hadden Well No. 1. The city of Fort Stockton first purchased gas from the Westerman well, but when the pressure in this well became low in June 1952 the city stopped buying gas from this well and commenced buying from the Hadden Well No. 1. On November 1, 1952, the city ceased purchasing gas from Hadden Well No. 1,— because of high hydrogen sulphide content of the gas. Since that date no gas has been flowed or sold from Hadden Well No. 1. There is no market in the area for sour gas. About the middle of January, 1953, defendants tried to find a treater to remove the hydrogen sulphide from the gas in Hadden Well No. 1 so that the city of Fort Stockton would purchase the gas. Their efforts were unsuccessful. The tests of these treaters were not made at the well, but off the lease.

The trial court filed findings of fact by which he found that the lease was in full force by virtue of production of oil and gas only until some time in October or November 1952, when defendants ceased to produce oil or gas, and that no oil or gas was produced, saved or sold from the lease from or after November 1952, and no royalties or rentals were paid by defendants to plaintiffs from or after such date. That defendants in November, 1952 were not engaged in drilling for oil and/or gas, and no drilling operations were commenced within the period of ninety days from and after the cessation of production of oil or gas, nor at any time thereafter; that defendants commenced in good faith to work on said well and on treating of the sour gas in an effort to make the same marketable, but that the defendants did not resume any drilling operations. He concluded that defendants had breached the lease contract by failing to resume drilling operations after production ceased within the time provided in the lease.

█ It must be noticed that a shut-in well is not being produced—in other words, a producing well is one where the product therefrom is being sold in the

market. Cox v. Miller, Tex.Civ.App., 184 S.W.2d 323; Giles v. McKanna, Tex.Civ.App., 200 S.W.2d 709. Nor do we have here a temporary ceasing of production due to needed repairs, mechanical breakdown, etc. Stanolind Oil & Gas Co. v. Barnhill, Tex.Civ.App., 107 S.W.2d 746; Garcia v. King, 139 Tex. 578, 164 S.W.2d 509.

█ It appears from the uncontroverted evidence that further drilling operations on the lease would have been useless and a waste of money since the well already drilled thereon was ample to drain the lease; nevertheless the terms of the lease are clear and unambiguous. The resumption of drilling operations is expressly required in the event production should for any reason cease or terminate, in order to keep the lease in force. Since this was not done the lease ipso facto terminated.

The judgment is affirmed.