Richard A. HALL et al., Appellants,

v.

E. S. McWILLIAMS, Appellee.

No. 11411.

Court of Civil Appeals of Texas.

Austin.

June 15, 1966.

Rehearing Denied July 6, 1966.

Rutledge & Rutledge, R. M. Rutledge, Abilene, for appellants.

Bedford & Underwood, E. B. Underwood, Ballinger, for appellee.

PHILLIPS, Justice.

This is a suit brought by E. S. McWilliams, appellee, against appellants Richard A. Hall and others asking the court to declare an oil and gas lease terminated by its own terms [1] by reason of a complete cessation of production of oil, gas and other minerals from the leased land for periods in excess of 60 days during the secondary term. That during said periods in excess

of 60 days there were no drilling or reworking operations on said land instituted by lessee or his assigns. Appellee lessor also sued for the value of minerals owned by him and removed from the land after the termination of the lease. Appellants here are the assignees of the original lessee.

At the close of the trial and by agreement of the parties, the case was withdrawn from the jury and submitted to the court.

The trial court declared the lease terminated by its own terms as of January 1, 1964. The judgment also held those who were operating lease owners accountable for the oil produced since May 1, 1964, the date of their leasehold assignments. Upon agreement and stipulation of the parties, appellee allowed the defendants-operators recovery of their lease operating expenses after cancellation.

We affirm the judgment of the trial court.

The lease under attack is on a printed form containing the standard habendum clause for a term and so long thereafter as oil, gas or other mineral is produced thereunder. It also contains the 60 day drilling and reworking provision set out above.

Production was established in the primary term but by September of 1963 there remained only one producing well which pumped oil with a large amount of salt water. The salt water was being moved to an adjoining lease and pumped into an injection well. On September 9, 1963 the Railroad Commission of Texas suspended the permit for the injection well and the lessee here was left with a producing oil

---

[1]. The 60 day provision in the lease is as follows:

"If prior to discovery of oil or gas on said land Lessee should drill a dry hole or holes thereon, or if after discovery of oil or gas the production thereof should cease from any cause, this lease shall not terminate if Lessee commences additional drilling or re-working operations within sixty (60) days thereafter or (if it be within the primary term) commences or resumes the payment or tender of rentals on or before the rental paying date next ensuing after the expiration of three months from date of completion of dry hole or cessation of production."

well but with accompanying salt water that had to be disposed of in some other manner. The trial court found that no oil was taken out of the ground during the months of October, November and December, 1963. During this time a pumper continued to service the lease each week, started the motor on the well and pumped the well for about five minutes or long enough to pass fluid by the pump to keep it from sticking. In January and February of 1964 there was a resumption of routine pumping and the trial court found that a measurable quantity of oil, forty-six barrels, was brought to the surface; that in April 176 barrels of oil were produced.

In March of 1964 the Railroad Commission granted permission to inject water into another well on an adjoining lease, however the well would not take the water until it was reworked.

By July 28, 1964 regular production from the lease in question was resumed which continued with reasonable regularity through the trial in September of 1965.

On November 4, 1964 appellee notified his lessee of his intention to cancel the lease.

Appellee is before this Court with six points of error, the first being that of the court in cancelling the lease as of January 1, 1964 without evidence that lessee was not making a profit and that a reasonably prudent operator would have ceased to operate the well under the circumstances.

We overrule this point.

Appellants rely on Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684 and Skelly Oil Co. v. Archer, 163 Tex. 336, 356 S.W.2d 774 for his point of error number one. These cases are not in point here as they are applicable only to the question of whether *paying* production from a lease has ceased.

■ In the case at bar the trial court found, and the evidence here is undisputed, that there was no production from the lease in question and no drilling or reworking operations on the lease for more than 60

days. The trial court correctly held that the lease terminated under its own terms. See Wainwright v. Wainwright, Tex.Civ.App., 359 S.W.2d 628, er. ref., n. r. e.

Appellants' second and third points, briefed together, are the error of the trial court in holding and concluding that such cessation of production (actual lifting of oil out of the ground) as did occur was not "temporary;" the error of the trial court in not holding plaintiff estopped to assert termination of the lease on account of his silence for the period in which appellants did necessary work on the lease and water disposal system and until routine pumping has been in progress for more than three months.

We overrule these points.

■ Under the terms of the lease the court was correct in holding that the cessation of production for more than 60 days was not temporary. Woodson Oil Company v. Pruett, Tex.Civ.App., 281 S.W.2d 159, writ ref., n. r. e.

■ As to estoppel, there is no contention that appellee ever made any representation to appellants or even talked to them concerning their operation of the lease or their purported taking of the assignments of the leasehold. There is neither an allegation in the pleadings nor any proof of any duty on the part of the appellee to advise appellants as to the state of the title to the leasehold nor as to the manner in which they operated or failed to operate the leasehold. The lease had terminated by its own terms prior to the time that appellants made any expenditures in connection therewith. All of these expenditures were made after May 1, 1964 for which appellants were voluntarily reimbursed by appellee.

■ In order for the doctrine of estoppel to apply, it would not only be necessary for appellee to have breached some duty owed to appellants, but at the time of such breach, it would be necessary that the lease be valid and subsisting. In this connection,

see Woodson Oil Company, cited above, and Adams v. Cannan, Tex.Civ.App., 253 S.W.2d 948, error refused.

Appellants' fourth, fifth and sixth points of error, briefed together, are that of the trial court in its sixth finding of fact to the effect that during October, November and December of 1963 no effort was made by any lease owner and no action was taken to find a place to dispose of salt water, or a method of doing so, or to solve the problem posed by the presence of salt water, and error in said finding that no good reason existed for such failures, for the reason that there is in this record no evidence bearing upon any such matters; the error of the court in finding and concluding that no drilling or reworking activities were conducted in October, November and December of 1963 or in March, April and May or June of 1964 in the face of contrary and uncontroverted evidence; error in adjudging cancellation of the lease as of January 1, 1964, thereby giving no effect to the 60-day drilling and reworking paragraph in the lease in question.

We overrule these points.

Appellants contend that the trial court held an incorrect view as to what constituted drilling and reworking operations as the evidence showed that all of the period from October, 1963 to April of 1964 (except January and February when actual pumping of oil was being accomplished) the engine on the pump was pumped weekly to pass fluid by the pump; sometime in February or March, 1964 the water system was re-arranged to move water to an adjoining lease; sometime before March 16, 1964 application was made for permit to dispose of water in a well on an adjoining lease; that the water system was changed to it but that it would not take the water; sometime in April, 1964, 176 barrels of oil were pumped and sold; early in May, 1964 the pumping equipment was checked, operated briefly and lifted some oil to the surface; a gas line was moved in June to provide a better source of supply and during May and June

attempts were made to assemble well records, assignments and pertinent data; starting on July 24, 1964 re-perforation and acidization of the injection well on an adjoining lease was completed and routine pumping was resumed by July 28, 1964.

 The trial court held, and correctly so, that the lease had terminated by its own terms by January 1, 1964. All that was done during this period of time was a routine starting of the pump on the lease to keep the pump in running operation. This is not sufficient to constitute drilling or reworking activities under the terms of the lease as a matter of law. Gulf Oil Corporation v. Reid, 161 Tex. 51, 337 S.W.2d 267; Francis v. Pritchett, Tex.Civ.App., 278 S.W.2d 288, error refused; Hickey v. Spangler, Tex.Civ.App., 358 S.W.2d 216, error ref., n. r. e.

We affirm the judgment of the trial court.

Affirmed.