In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00026-CV

                                                ______________________________

 

 

                EDITH ELIZABETH RAMSEY, BUCK BRYAN RAMSEY

AND OPTIMAL UTILITIES,
INC., Appellants

 

                                                                V.

 

                                JOE GRIZZLE, CHARLES CALHOUN, 

AND DONNA KAY CALHOUN,
Appellees

 

 

                                                                                                  


 

 

                                      On Appeal from the 102nd
Judicial District Court

                                                          Red
River County, Texas

                                              Trial Court Nos. CV00756 & CV-01432

 

                                                                                                  


 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter




 








                                                                   O P I N I O N

 

            Very
often determining which party has the
burden of proof is perfunctory and does not have a great effect.  In this case, we believe the burden of proof
is crucial.  

            Buck Bryan Ramsey and his
wife, Edith Elizabeth Ramsey,[1]
became the owners of real property in Lamar County upon which an oil well was
located, the well having been drilled pursuant to a pre-existing oil and gas
lease (the Hancock lease).  Joe Grizzle
became the holder of the leasehold estate.  The operators of the well experienced problems
with it, and its production was intermittent for several years.  Thinking that he had been excluded from
operating the well, Grizzle filed suit to enjoin Ramsey from excluding him and
to declare his lease valid; Ramsey countered with an allegation that the lease
had terminated by its own terms because for more than ninety consecutive days
Grizzle had no production or other operations at the well site.  Thinking the lease had expired, Ramsey
entered into another oil and gas lease on the same property with Optimal Utilities,
Inc., who intervened in the suit and likewise alleged Grizzle’s lease had
terminated for lack of operations.  Grizzle
sold a ten percent interest in the lease to Charles and Donna Kay Calhoun.  Optimal brought in the Calhouns as
defendants.  

            All parties filed what
were designated as declaratory judgment actions.  The purchaser of the oil, Eastex Oil,
filed an interpleader action; not knowing who to pay, Eastex deposited the
money into the registry of the court. 
The two cases were consolidated for trial. 

            Trial was to a jury who
found that Ramsey and Optimal had not shown a cessation of operations for more
than ninety consecutive days.  Based on
that verdict, the trial court entered a declaratory judgment that the Grizzle
lease was valid and awarded Grizzle attorney’s fees of over $49,000.00 plus
additional amounts on appeal.  Ramsey and
Optimal’s appeals raise several issues:  (1)
lack of standing by Grizzle; (2) default in proof of title; (3) insufficiency
of evidence to uphold the jury verdict; (4) improper attorney’s fees; and
(5) incurable jury argument.  We
affirm the judgment of the trial court in some respects, but reverse the
attorney’s fee award.  

I.          FACTUAL AND PROCEDURAL HISTORY

            A.        History of
Leases

            Pauline
Hancock, G. T. Hancock, Ollie Gill, and W. E. Gill first leased the Hancock
well in 1975 to Oil Development Company of Texas.  A series of assignments throughout the years
led to a 1999 lease to Dale Glass, who would later assign his interest to
Grizzle. 

            When
the Ramseys purchased the real estate in 2002, the ownership they acquired was
subject to the existing Hancock lease.  




 

            B.        Acquisition
of Lessees= Rights
by Grizzle; Assignment(s) by Grizzle

            Grizzle
claims, and it appears to be generally accepted, that he got the interest in
the Hancock lease by assignment from Glass in June 2003, to be effective July
1, 2003.  Glass was the lessee from the
1999 lease and the man working for Grizzle as Apumper.@ 
Grizzle later fired Glass in January 2005 and hired Michael Brooks as
pumper somewhere around February 2005. 

            Glass
explained the confusing set of circumstances leading up to the assignment to
Grizzle.  He had an interest in the well
and was involved in some litigation with Jack Atkins.  Grizzle got part of the interest from Atkins,
but required that Glass release Atkins. 
Glass would sell his claims against Atkins, then Grizzle was to furnish
the money to keep the well pumping and would serve as the operator.  A man named Sparkman was the operator when
Grizzle first got his interest.  Then
Grizzle became operator and, according to Glass, that was Awhen it went to hell.@ 

II.        DISCUSSION

            A.        Standing:  Trespass to Try Title or Declaratory Judgment
Action

                        1.         Title
was at issue in this case

            Ramsey
and Optimal argue that Grizzle lacks standing to assert this claim because this
case was in reality a trespass to try title case and Grizzle failed to prove a
title interest in the Hancock lease.  So
we must first decide whether we must review this case as a declaratory judgment
or based on requirements of a trespass to try title case. 

            The
Texas Supreme Court has explained that oil and gas leases are unique:  In Texas it has long been recognized that an
oil and gas lease is not a “lease” in the traditional sense of a lease of the
surface of real property.  In a typical
oil or gas lease, the lessor is a grantor and grants a fee simple determinable
interest to the lessee, who is actually a grantee.  Consequently, the lessee/grantee acquires
ownership of all the minerals in place that the lessor/grantor owned and
purported to lease, subject to the possibility of reverter in the
lessor/grantor.  The lessee’s/grantee’s
interest is “determinable” because it may terminate and revert entirely to the
lessor/grantor upon the occurrence of events that the lease specifies will
cause termination of the estate.  In the
cases before us today, the lessors retained only a royalty interest.  When an oil and gas lease reserves only a
royalty interest, the lessee acquires title to all of the oil and gas in place,
and the lessor owns only a possibility of reverter and has the right to receive
royalties.  A royalty interest, as
distinguished from a mineral interest, is a nonpossessory interest.[2]  Natural Gas Pipeline Co. of Am. v. Pool,
124 S.W.3d 188, 192 (Tex. 2003).[3]

            This
recitation of Texas law by the Texas Supreme Court illustrates that title to
the mineral estate is at issue here. 
Grizzle takes the position that he still holds the fee simple
determinable, that cessation of operations did not exceed ninety days and,
therefore, did not terminate the lease. 
The Ramseys and Optimal maintain that the possibility of reverter
automatically vested in the Ramseys’ title to the mineral estate, after which
they entered into a lease with Optimal.

                        2.         The impact of title as issue

            With an exception not applicable
here, a trespass to try title claim is the exclusive method in Texas for
adjudicating disputed claims of title to real property.  See Tex.
Prop. Code Ann. § 22.001(a) (Vernon 2000); Martin v. Amerman,
133 S.W.3d 262, 267 (Tex. 2004);[4]
Koch v. Gen. Land Office, 273 S.W.3d 451, 455 (Tex. App.—Austin 2008, pet.
filed); Glover v. Union Pac. R.R. Co., 187 S.W.3d 201, 211 (Tex.
App.—Texarkana 2006, pet. denied).  When
the suit does not involve the construction or validity of deeds or other
documents of title, the suit is not one for declaratory judgment.  McRae Exploration & Prod. Co. v.
Reserve Petro. Co., 962 S.W.2d 676, 685 (Tex. App.—Waco 1998, pet. denied).

            In
a cessation of operations case, the San Antonio court pointed out that
construction of the lease was not at issue in a case.  See BP Am. Prod. Co. v. Marshall,
288 S.W.3d 430, 453 (Tex. App.—San Antonio 2008, pet. filed).  Instead, the issues were whether the
defendant failed to engage in good faith drilling or reworking operations
without a sixty-day cessation and committed fraud with regard to its
activities.  Id.  Despite their pleading, the underlying nature
of the plaintiffs’ suit was to obtain a determination of title to the leasehold
and for further relief based on that determination.

            Indeed,
this Court recently re-emphasized the distinction between trespass to try title
and a declaratory judgment action.  See
Lile v. Smith, 291 S.W.3d 75, 78 (Tex. App.—Texarkana 2009, no
pet.).  The appellant complained that the
trial court was not authorized to enter a declaratory judgment action when
title was at issue and the case was not a boundary dispute.  Id. at 77–78.  Noting that the proper vehicle was a trespass
to try title and faced with a point of error that plainly recognized that and
asked for relief on that basis, this Court sustained the appellant’s point of
error, reversed the trial court=s
judgment, and rendered judgment that appellees take nothing.  Id. at 79. 

            Well-established
authority supports the conclusion that this matter is not properly authorized
to proceed as a declaratory judgment.  See Renwar
Oil v. Lancaster, 154 Tex. 311, 276 S.W.2d 774, 776 (1955) (in venue
context; in order to determine a dispute concerning royalties, “the suit is
essentially one for the recovery of land and to quiet title . . . even though
cast as one for a declaratory judgment,” an adjudication that certain
unitization agreements were void was a conveyance in realty and, as to that
matter, the suit was an effort to remove cloud from title, even though alleged
as an effort to construe a contract).  

            Other
cases examining the nature of the suit came in the context of venue.  Kilgore
v. Black Stone Oil Co., 15 S.W.3d 666 (Tex. App.—Beaumont 2000, pet.
denied); Griffin v. Collins, 310
S.W.2d 137 (Tex. Civ. App.—Amarillo 1958, no writ).  In this line of cases, courts have
consistently characterized allegations concerning instruments relating to real
property as suits concerning the title to land. 
See also Kelly Oil Co. v. Svetlik, 975 S.W.2d 762 (Tex. App.—Corpus Christi
1998, pet. denied) (dispute regarding overriding royalty interests necessarily
hinged on determination of whether lease was in effect or terminated; since
suit related to real property in Mississippi, Texas courts were without
jurisdiction).

            This
Court has pointed out that “[a]ny suit that involves a dispute over the title
to land is, in effect, an action in trespass to try title, whatever its form
and regardless of whether legal or equitable relief is sought.”  Jordan
v. Exxon Corp., 802 S.W.2d 880, 883 (Tex. App.—Texarkana 1991, no writ)
(citations omitted).

            Grizzle
characterized and continues to characterize his suit as one for declaratory
judgment.  The Ramseys= countersuit likewise sought
declaratory judgment (in addition to other causes of action).  Optimal=s
petition in intervention also characterized its action against Grizzle and the
Calhouns as a suit seeking declaratory judgment.

            Since
title to real property was at issue in the instant case, a declaratory judgment
action is not a proper vehicle
to resolve the matter.  Had this been a
boundary dispute, a declaratory judgment action is permissible.  See Tex.
Civ. Prac. & Rem. Code Ann. § 37.004(c) (Vernon 2008).[5]  Had it been a case in which interpretation of
the lease was at issue, the matter may have been properly resolved
through a declaratory action.  See
Cadle Co. v. Ortiz, 227 S.W.3d 831, 837–38 (Tex. App.—Corpus Christi
2007, pet. denied).  As the instant case
stands, however, title was at issue here, meaning the proper vehicle was a
trespass to try title action.

            Since
this case involves title to real property, we will analyze it as a trespass to
try title case regardless of the form or classification of the suit by the
parties. 

                        3.         Requirements of trespass to try title
action

            An
action in trespass to try title is the vehicle by which parties determine title
to land, improvements on land, or other real property.  Tex.
Prop. Code Ann. § 22.001(a); see Rogers v. Ricane Enters., Inc.,
884 S.W.2d 763, 768 (Tex. 1994); Yoast v. Yoast, 649 S.W.2d 289, 292 (Tex. 1983).  Trespass to try title is a purely statutory
creation and Aembraces
all character of litigation that affects the title to real estate.@ 
Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 133 S.W.2d 767,
770 (1939).  The action is governed by
special pleading and proof requirements established by the Texas Rules of Civil
Procedure.  See Tex. R. Civ. P. 783–809.  A plaintiff who has no interest at all in the
land lacks standing to assert a trespass to try title action.  Walston v. Lockhart, 62 S.W.3d 257,
259 (Tex. App.—Waco 2001, pet. denied).  

            To
maintain an action of trespass to try title, the person bringing the suit must
have title to the land sought to be recovered. 
Brownlee v. Sexton, 703 S.W.2d 797, 799‑800 (Tex.
App.––Dallas 1986, writ ref’d n.r.e.); Wall v. Carrell, 894 S.W.2d 788,
797 (Tex. App.––Tyler 1994, writ denied). 
A plaintiff=s right
to recover depends on the strength of his or her own title, not the weaknesses
of the title of his or her adversary.  Rogers,
884 S.W.2d at 768; Brownlee, 703 S.W.2d at 799–800; Land v. Turner,
377 S.W.2d 181, 183 (Tex. 1964); Wall,
894 S.W.2d at 797.  A defendant is not
required to show title in himself or herself, nor may the plaintiff rely on the
defendant’s failure to do so.  Brownlee,
703 S.W.2d at 799–800; Wall, 894 S.W.2d at 797.  Ordinarily, a plaintiff may recover
(1) by proving a regular chain of conveyances from the sovereign, (2) by
proving a superior title out of a common source, (3) by proving title by
limitations, or (4) by proving prior possession and that the possession has not
been abandoned.  Rogers, 884
S.W.2d at 768; Turner, 377 S.W.2d at 183.

                        4.         Proof of title 

            Ramsey and Optimal argue that
Grizzle has no standing to present what essentially is a trespass to try title
suit because he did not prove any ownership of the property in question.  It is true that Grizzle, having filed a
declaratory judgment action, did not provide documentary evidence of his
leasehold interest.  The assignment from
which Grizzle claims to have acquired the interest in 2003 is not in the
record.  He did testify to his
acquisition of title.  More importantly,
Ramsey admitted in his pleadings and in testimony that Grizzle did have a valid
lease at one time to the Hancock well.[6]  In the Ramseys’ original counterclaim, they
allege ownership of a forty-acre tract in the John Price Survey A-673, Red
River County, Texas, which is encumbered by the oil, gas, and mineral lease
which forms the basis of this lawsuit. 
Further, it is alleged that before they acquired the property, George
Hancock leased the property to Dale Glass, as lessee.  Glass assigned the lease to counter-defendant
(Grizzle). 

            B.        Standing
(or Failure to Prove Title)

            Ramsey
and Optimal=s first
point complains of standing in terms of Grizzle=s
failure to prove chain of title.  Ramsey
cites authority relating to trespass to try title law on the principle that
Grizzle Ais not
entitled to recover unless [his] own title is effectively disclosed.”  Wall,
894 S.W.2d at 796.  Ramsey and Optimal
point to the absence of evidence of legal title to the mineral estate and ask
the Court to reverse on this issue Abecause
Grizzle does not qualify for any affirmative relief.@  Grizzle and the Calhouns respond to the
standing point of error by taking the position that the standing issue was
waived; this is inaccurate since standing, an element of subject matter
jurisdiction, cannot be waived.  Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444–45 (Tex. 1993).  They go on to point out that all the parties
recognized Grizzle as being the lessee and having title.  

            Despite
having been couched in terms of standing, it appears that the substance of the
point of error goes to Grizzle=s
failure to prove he had good title, an element of a trespass to try title
action.  

            It
is evident that this case was tried by all parties as a declaratory judgment
action which would not require proof of title in the orthodox manner required
for trespass to try title cases.  The
issue before us is whether, despite this errant view, there is sufficient
evidence in the record to support a conclusion that Grizzle owned a lease of
the property in question.  We find the
evidence is sufficient based on the admissions of Ramsey that Grizzle had a “rightful”
lease on the property as well as the pleadings acknowledging the lease.  In essence, this was not a disputed issue as
all parties assumed the lease was at one time valid and the entire trial was to
determine if that valid lease had expired by its own terms.  While Optimal never made such an admission,
it took its title based on the ownership interest of Ramsey after Ramsey had
concluded that the prior lease with Grizzle had expired.  Optimal was not the lessor; Ramsey acknowledged
Grizzle’s leasehold interest.  We find
the evidence to be sufficient to allow Grizzle standing to assert his
leaseholder rights in this action. 

            C.        Factual
Sufficiency of the Evidence

            Ramsey
and Optimal ask the Court to find that the evidence is factually insufficient
to support the jury=s verdict
on the operations issue.  To prove the
lease had terminated, Ramsey and Optimal had the burden to prove that Grizzle
failed to maintain operations on the Hancock well for ninety consecutive days.  Phillips
Petroleum Co. v. Rudd, 226 S.W.2d
464, 466 (Tex. Civ. App.—Texarkana 1949, no writ); Guleke v. Humble Oil & Ref.
Co., 126 S.W.2d 38, 41 (Tex. Civ. App.—Amarillo 1939, no writ).

            When
considering a factual sufficiency challenge to a jury’s verdict, the court must
consider and weigh all of the evidence, not just that evidence which supports
the verdict.  Ramsey v. Tex. Trading
Co., 254 S.W.3d 620, 625 (Tex. App.—Texarkana 2008, pet. denied) (citing Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406–07 (Tex. 1998)).  Since Ramsey and Optimal had the burden on
the continuous operations issue, they must demonstrate on appeal that the
adverse finding is against the great weight and preponderance of the evidence.  We weigh all of the evidence, and can set aside
a verdict only if the evidence is so weak or if the finding is so against the
great weight and preponderance of the evidence that it is clearly wrong and
unjust.  Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); see
Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986).

            The
1999 lease under which Grizzle claims to still have an interest in the mineral
estate contains the following language:

Unless sooner terminated or longer kept in force
under other provisions hereof, this lease shall remain in force for a term of
[1 year] from the date hereof, hereinafter called “primary term”, and as long
thereafter as operations, as hereinafter defined, are conducted upon said land
with no cessation for more than ninety (90) consecutive days. 

 

            .
. . .

 

Whenever used in this lease the word “operations”
shall mean operations for and any of the following: drilling, testing,
completing, reworking, recompleting, deepening, plugging back or repairing of a
well in search for or in an endeavor to obtain production of oil, gas, sulphur
or other minerals, excavating a mine, production of oil, gas, sulphur or other
mineral, whether or not in paying quantities.

 

The jury
answered ANo@ to the following question:

Do you find by a
preponderance of the evidence that Joe Grizzle, while operator of the Hancock
Well, failed to commence drilling or operations on the Hancock Well within
ninety days after the well ceased to produce oil and gas?

 

The Court will look at the
following evidence to determine whether factually sufficient evidence supports
the jury=s
verdict.

            When
the primary term expired to maintain the lease, it was required that operations
be conducted with no cessation for more than ninety consecutive days.  Ramsey argues that during several time
periods, each of more than ninety consecutive days, operations were not
conducted.  See Samano v. Sun Oil Co.,
621 S.W.2d 580 (Tex. 1981).  We first
must determine the time periods to be considered. 

            Initially the
question is what periods of time are to be considered as the ninety days where
no operations took place.  In Ramsey’s
original counterclaim, which was not amended, it is alleged that on or about
December 27, 2004, production ceased for a period in excess of ninety
consecutive days.  Optimal’s pleading
simply alleges that Grizzle’s lease had expired “principally for lack of
continuous operation.”  No special
exceptions were made to the pleadings. 
Now at the appellate level, Ramsey and Optimal direct us to time periods
during the years 2003 and 2006 showing the noncontinuous operations; no
argument is presented that the lease expired due to inactivity in 2004.  

            Grizzle
argues that neither the 2003 nor the 2006 time period of alleged noncontinuous
operations should be considered as there was no pleading to support those time
frames.  Further, Grizzle argues that the
2006 period cannot be considered because, he alleges, prior to that time Ramsey
had repudiated the lease thereby relieving Grizzle from continuing to comply
with it.  Countering that argument,
Ramsey and Optimal point out that Grizzle did not plead the affirmative defense
of repudiation and is precluded from relying on that defense.  Repudiation is in the nature of an avoidance
or affirmative defense which is not available to the defendant unless
specifically pleaded.  Brantley v. Etter, 662 S.W.2d 752, 757 (Tex. App.—San Antonio 1983), writ ref’d n.r.e., 677 S.W.2d 503 (Tex.
1984) (citing Mid-Tex Constr. Corp. v. Passero, 430 S.W.2d 515, 517
(Tex. Civ. App.—El Paso 1968, writ ref’d n.r.e.)).   

            Grizzle
filed a lawsuit against Ramsey, who responded with a counterclaim alleging the
lease had terminated.  Even after the
matter was raised to the trial court, no trial amendment was offered on the
repudiation issue.  Grizzle did request a
jury finding on the repudiation issue, which was denied by the trial court, but
that denial has not been urged as erroneous by a counterpoint. 

            Ramsey
pled that the production ceased on or about December 27, 2004, and that such
cessation of production lasted for a period of time in excess of ninety
consecutive days.  The pleading does not
necessarily require a construction that the period of nonproduction was
December 27, 2004 through March 27, 2004. 
Since the pleading was couched in terms of “in excess of” ninety days,
the cessation period could, theoretically, have continued for years.  

            As
to the 2003 time period, the pleading of Optimal alleged in the broadest of
terms that the Grizzle lease had expired for lack of continuous operation
without designating any time period whatsoever. 
Since no exception was made to this pleading, a limitation for a
specific time period does not apply. 
Without limitation in the pleading and with no exception to the pleading,
we cannot restrict the evidence on this issue to a particular time period.  The fact that Optimal filed this unobjected-to
global pleading placed all time periods in question without limitation.  Consequently, the trial court did not err in
submitting a jury issue without limiting a precise time period of the alleged
noncontinuous operations.  With this
explanation, we will proceed to examine the operations at the well site during
the time periods in 2003 and 2006 that are argued in the appellate briefs. 

                        1.         What are Aoperations@ 

            The
Texas Supreme Court has concluded that obtaining drilling permits and
performing other preparatory work does not constitute “operations” when there
is no actual work done on ground in an attempt to produce.  Ridge Oil Co. v. Guinn Invs., Inc.,
148 S.W.3d 143, 160 (Tex. 2004).  The
Texas Supreme Court referred to operations that are necessary to maintain the
lease as “ activities that were calculated to obtain production.”  Id.[7]  Here,
the question is not so much whether the activities were sufficient, but
primarily a claim that the proof that any activities occurred at the well site
is too incredible or weak to be believed. 
For instance, Ramsey and Optimal acknowledge there are Texas Railroad
Commission (RRC) records showing that seventy-three barrels of oil were
produced in July 2003, but argue that evidence was a corrected report,
belatedly filed, and that evidence that no electricity was used shows
conclusively that no oil could have been produced.  As to the 2006 time period, appellants argue
that Brooks’ and Grizzle’s testimony that Grizzle spent $30,000.00–$40,000.00
in the summer of 2006 to repair the rods was conclusively rebutted by other
evidence.  So the question before the
jury was primarily did Grizzle perform the activities he claimed or were these
claims too insubstantial and weak that they could not, in law, be credited by
the jury. 




 

                        2.         Time frame :  May 1, 2003 to September 30, 2003

            Grizzle
points out that he did not own the well in May 2003.  RRC records show that no oil was produced in
the months of May and June 2003.  Those
records show seventy-three barrels for July 2003 but none for August and
September 2003.  But pumper records
(daily accounts of production) show zero each day for the month of July 2003;
not 73.  

            Ramsey
relies on records that no usage of electricity was shown during July, August,
and September 2003, only a surcharge of $27.00. 
Based on this evidence, Ramsey urges that it was impossible to produce
oil during that time.  Other records,
however, call into question the accuracy of the electrical usage reports.  For the month of February 2005, one set of
electrical records shows a zero usage of electricity, while another Lamar
Electric Co-op statement indicates 1335 kilowatt hours usage during that time
period.  Evidence of operations consists
of a belated and contradicted report of seventy-three barrels of production in
July 2003; a pumper=s record
of emptying water from a tank on July 31, 2003; and a report of a sale that oil
was purchased in July 2003.  Ramsey
testified that he did not think the lease terminated in 2003.  

            Appellants
also point out that the July 2003 production number is also contradicted by
pumper Dale Glass= records
showing that the well was down on June 30, 2003, that it was not repaired in
July 2003, that there was no production in July 2003, and that there were no
charges for pumping the well.  The August
2003 letter asking Eastex Crude (buyer) to suspend payment to Grizzle until the
well was returned to a productive state also suggests that the July 2003
production number filed four months late with the RRC is inaccurate or somehow
askew.  Glass testified that Grizzle
regularly filed false or inaccurate reports with the RRC.  

            The
draining of the water, the Ramseys and Optimal maintain, is insufficient to
show operations, comparing it to the routine starting of a pump to keep it in
running condition found as insufficient to show operations in Hall v.
McWilliams, 404 S.W.2d 606 (Tex. Civ. App.––Austin 1966, writ ref=d n.r.e.).  The Ramseys and Optimal point out that
Grizzle hangs his hat on operations during this time period based on the
production report. 

            The
Ramseys and Optimal respond to the notion that Eastex=s
purchase of oil in July 2003 is factually insufficient to show operations at
the well.  They argue that the production
record suggests that the oil purchased in July 2003 was produced earlier than
July 2003.  Further, they reiterate that
the pumper=s records
and the electricity usage support the fact that the well was not producing in
July 2003.

            We
find the jury could have reasonably found that there is some evidence of
production during this time period and such finding would not be against the
great weight and preponderance of the evidence. 


                        3.         Time frame:  May 1, 2006 to November 30, 2006

            The
production reports filed with the RRC show that Grizzle did not produce any oil
out of the Hancock well during this 210-day time period.  Grizzle claimed Ajust
normal operations@ were
going on.  On May 11, 2006, Grizzle sent
a letter to the Ramseys seeking a ratification of the lease and offering money
in exchange for the ratification.  

            Brooks
also explained that Grizzle called for a workover rig to come out in April 2006,
but that it did not get out to the well until October 2006, suggesting the well
was down for those seven months.  In
somewhat inconsistent testimony, Brooks testified that sometime in the summer
of 2006, Grizzle spent $30,000.00-plus replacing casings and rods.  

            The
Ramseys and Optimal point to electrical records to suggest that Grizzle did not
use any electricity at the well from February 28, 2006 to June 29, 2006.  The testimony from Brooks concerning the work
done at the Hancock well site during this time was:

            Q         . . . . 
Isn’t it true that during that summer, Mr. Grizzle replaced the rods and
the pipe on the Hancock?

 

            A         Yeah.

 

            Q         So during this time he says y’all weren’t
doing anything, y’all replaced the casing and the rods.

 

            A         Right. 


 

            Grizzle
testified, “The well was down at some times in 2006, but we didn’t abandon the
well.  We were out there working on it,
but we didn’t abandon it.  That was -- if
you remember back on the expense deal, that’s when we spent the forty thousand
dollars putting the pipe and the rods in, was during the summer of 2006.”  

            While
this evidence is nonspecific about precisely when the operations were
conducted, it was the burden of Ramsey and Optimal to prove cessation of
operations for ninety consecutive days. 
We must weigh all evidence introduced, and here Ramsey and Optimal had
the burden to show the evidence was so weak or the finding was so against the
great weight and preponderance of the evidence that it is clearly wrong and
unjust.  Francis, 46 S.W.3d at 242. 

            Ramsey
and Optimal proved that no oil was produced and presented evidence that no
electricity was used through June 30, 2006.  But the testimony of both Brooks and Grizzle,
which was apparently credited by the jury, directly states that operations were
done at the well in replacing the rods and pipes during the summer.  Our decision rests on the placement of the
burden of proof and the inferences the jury is allowed to make.  Clearly, Ramsey and Optimal had the burden of
proof; proving no oil production does not prove that no operations took
place.  Actual physical work being done
on equipment in a good faith effort to place it in working order to produce oil
constitutes sufficient operations to maintain the lease.  For us to set aside this verdict as
unsupported by the evidence, we must determine that the great weight of
evidence is so contrary to the jury finding that the failure to find in Ramsey
and Optimal’s favor was manifestly unjust. 
Even though Brooks’ and Grizzle’s testimony might be inconsistent with
other evidence (that the workover rig did not arrive until October), that was a
matter of credibility for the jury to determine.  We must recall that the jury found that
Ramsey and Optimal failed in their proof; whether that would have been our
finding on this evidence is irrelevant. 
If Grizzle did $30,000.00–$40,000.00 of work on the oil site in the
summer in an effort to produce oil, presumably after June 30, 2006, it cannot
be concluded that the jury finding is so against the great weight of the
evidence as to result in a manifestly unjust result.      

            D.        Attorney=s Fees

            The
final judgment awarded Grizzle $49,706.25 in attorney=s
fees.  He is not entitled to them.

            First,
Ramsey and Optimal preserved this alleged error.  See Krabbe v. Anadarko Petroleum Corp.,
46 S.W.3d 308, 320–21 (Tex. App.—Amarillo 2001, pet. denied) (concluding that
since appellants failed to urge at trial court that appellee should not recover
attorney’s fees because suit was in essence a suit for title rather than being
properly a declaratory judgment action and since appellant failed to assert
such in court of appeals until after oral argument, error was waived).  Here, in response to Grizzle=s application for attorney=s fees, the appellants objected in
writing to his application maintaining that this was, by its nature, a trespass
to try title action in which attorney=s
fees are unavailable.  Ramsey also
objected on the same basis to the inclusion of attorney=s
fees in their objection to the proposed final judgment.  

            The
recovery of attorney’s fees under a trespass to try title suit is barred
because it is not provided for by the Texas Property Code.[8]  See Martin, 133 S.W.3d at
264.  Texas courts have followed this
rule consistently.  When a corporation’s
suit was in the nature of a trespass to try title, it was not entitled to
recover attorney’s fees.  McAnally v.
Friends of WCC, Inc., 113 S.W.3d 875, 881 (Tex. App.—Dallas 2003, no
pet.).  An award of attorney’s fees under
the Declaratory Judgments Act was not appropriate in a suit that was in the nature
of a trespass to try title.  Ely v.
Briley, 959 S.W.2d 723, 727 (Tex. App.—Austin 1998, no pet.).  The defendant was correct in maintaining that
the plaintiffs were not entitled to recover attorney’s fees under Section
37.009 when the suit was in the nature of trespass to try title.  See Marshall, 288 S.W.3d at 453–54;
see also EOG Res., Inc. v. Killam Oil Co., 239 S.W.3d 293, 304
(Tex. App.—San Antonio 2007, pet. denied).

            We
sustain this point of error and reverse the trial court=s
award of attorney=s
fees.  

            E.        Improper
Jury Argument

                        1.         Jury argument at issue

            Ramsey
and Optimal now complain that Grizzle’s attorneys made improper jury arguments;
however, only one objection was made to the jury argument, and that concerned
the issue of repudiation.  We agree the
trial court erred in failing to sustain that objection; since the issue of
repudiation was not submitted to the jury, any discussion of the issue was
irrelevant and therefore no argument should have been permitted.  The question is whether the erroneous ruling
probably caused the rendition of an improper judgment.  Tex.
R. App. P. 44.1(a).  The argument
concerning the issue of repudiation made by one of appellants’ attorneys was
that Glass placed the chain on the property and Ramsey filed a lawsuit that the
lease was terminated, but now after Optimal intervened “they don’t want
repudiation.”  At that point, an
objection was lodged and overruled.  It
was then argued that Glass testified that the chain was not to keep Grizzle
out, but to keep beekeepers out—and this testimony was an effort to try “to
make facts fit their theory.”  This
argument appears to be an attempt to discredit the testimony of Glass in order
to show “[o]ver-testifying.”  It is not
an appeal to passion, or prejudice, but is irrelevant since the issue of
repudiation was not presented to the jury. 
The mere possibility of harm is not sufficient.  The entire record must support the conclusion
that it is more probable that the jury’s verdict reflects consideration of the
improper matter than it is that the verdict was based on proper
proceedings.  See Smith v. Smith, 720 S.W.2d 586, 593 (Tex. App.—Houston [14th
Dist.] 1986, no writ).  We do not find
this argument one that probably caused the rendition of an improper verdict and
judgment.  

            No
objection was made to any of the other complaints that Ramsey and Optimal now
make about the jury arguments.  The jury
arguments complained of are in the following categories: 

1.  “I trust the testimony of these people down
here in Red River County more so than I do a man that’s sitting down in Houston”;


2.  Counsel’s discussion that his father grew up
nearby;

3.  That elderly people can be taken advantage of
by some businessmen;

4.  That as the various points were made by
Ramsey and Optimal, Grizzle’s attorney was able to answer each charge; Ramsey
and Optimal had not met their burden of proof, and the testimony had “been to
the point of trying to mislead.” 

                        2.        Analysis


            Generally, a litigant will not be
allowed to urge on appeal that a violation of the rules defining permissible
jury argument resulted in an improper judgment unless the litigant made a timely
objection to the argument.  Tex. R. App. P. 33.1; Standard Fire
Ins. Co. v. Reese, 584 S.W.2d 835, 839‑41 (Tex. 1979).  In rare instances, however, there is an
exception for argument so inflammatory that its harmfulness could not have been
eliminated by an instruction to the jury to disregard it.  In instances of such “incurable” argument,
the failure to object at trial is not a waiver of the right to complain on
appeal.  See Otis Elevator Co. v. Wood,
436 S.W.2d 324, 333 (Tex. 1968). 
However, unlike an appeal to racial or religious prejudice, an appeal to
local prejudice or unity usually is considered a curable impropriety for which
an objection is required.  Rodriguez
v. Hyundai Motor Co., 944 S.W.2d 757, 774 (Tex. App.—Corpus Christi 1997), rev’d on other grounds, 995 S.W.2d 661
(Tex. 1999).  Incurable jury argument is
rare because typically retraction of the argument or instruction from the court
can cure any probable harm.  Phillips v. Bramlett, 288 S.W.3d 876,
883 (Tex. 2009) (citing Living Ctrs. of
Tex., Inc. v. Penalver, 256 S.W.3d 678, 680 (Tex. 2008)).  The party claiming incurable harm must
persuade the court that, based on the record as a whole, the offensive argument
was so extreme that a “juror of ordinary intelligence could have been persuaded
by that argument to agree to a verdict contrary to that to which he would have
agreed but for such argument.”  Id. (quoting Goforth v. Alvey, 153 Tex. 449, 271 S.W.2d 404, 404 (1954)). 

            After
examining the entire record, we find that none of the complained-of arguments
meet the onerous test required.  This
point of error is overruled.  

III.       CONCLUSION

            We
affirm the judgment of the trial court finding Ramsey and Optimal failed in
their burden to prove a cessation of operations for ninety consecutive days and
affirm the judgment finding Grizzle’s lease valid.  We reverse the judgment for attorney’s fees
and render judgment that Grizzle take nothing for attorney’s fees.  

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          December
16, 2009

Date Decided:             May
19, 2010











[1]We
will refer to Mr. and Mrs. Ramsey simply as Ramsey.  

 





[2]A
nonpossessory interest such as royalty interest is not a proper matter for
resolution by trespass to try title.  See
Grasty v. Woods, 230 S.W.2d 568, 571 (Tex. Civ. App.—Galveston 1950,
writ ref=d n.r.e.).  

 





[3]Citing
Cherokee Water Co. v. Forderhause, 641 S.W.2d 522, 525 (Tex. 1982); W.
T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27, 28–29
(Tex. 1929); Walker, Fee Simple Ownership
of Oil & Gas in Texas, 6 Tex. L.
Rev. 125, 128–29 (1928); Concord Oil Co. v. Pennzoil Exploration
& Prod. Co., 966 S.W.2d 451, 459 (Tex. 1998); Walker, The Nature of the Property Interests Created
by an Oil & Gas Lease in Texas, 7 Tex.
L. Rev. 539, 547–48 (1929).





[4]After
Martin was decided, the Legislature added to Section 37.004 a specific
provision that allows for declaratory judgment action to determine a case in
which the sole issue is a boundary dispute. 
Martin, then, a boundary dispute, was abrogated as to the issue
of boundary dispute not being a proper matter for a declaratory judgment
action.  It remains good law as to other
title disputes, however, and was recently cited by the Texas Supreme Court for
that proposition.  MBM Fin. Corp. v.
Woodlands Operating Co., L.P., 292 S.W.3d 660, 669 n.48 (Tex. 2009) (citing
Martin, 133 S.W.3d at 267
(for position “that the Property Code describes trespass‑to‑try‑title
actions as ‘the method for
determining title’”)).





[5]A
declaratory judgment action may be brought “when the sole issue concerning
title to real property is the determination of the proper boundary line between
adjoining properties.”  Tex. Civ. Prac. & Rem. Code Ann.
§ 37.004(c); see State v. BP Am. Prod. Co., 290 S.W.3d 345,
360 (Tex. App.––Austin 2009, pet. filed); Veterans Land Bd. v. Lesley,
281 S.W.3d 602, 627 (Tex. App.––Eastland 2009, pet. filed).





[6]

                Q.  . . . . You agree here today before the jury,
Mr. Ramsey, that in 2003, 2004, Joe Grizzle had a lease with you.  Correct? 


                A.
Yes  

                Q.  But you don’t dispute that he had a
lease.  It’s just your position that at
some point it terminated.  Right?  

                A.  After
ninety days.

               .
. . .  

                Q.  . . . . There is no question that until you
allege that the lease terminated, Mr. Grizzle had a rightful lease.  Right? 


                A.  Right.





[7]In
Ridge, the Texas Supreme Court
summarized the facts of several cases to explain situations that qualify as
“operations.”  Utley v. Marathon Oil
Co., 31 S.W.3d 274, 275, 278–79 (Tex. App.––Waco 2000, no pet.) (lease
required operations for drilling, mining, or reworking or additional operations
to be commenced or prosecuted with no cessation of more than ninety consecutive
days and pipeline leading to the well was being constructed during disputed
time and “there were activities testing and trying to obtain production from .
. . a ‘wildcat’ well”); Petersen v. Robinson Oil & Gas Co., 356
S.W.2d 217, 219 (Tex. Civ. App.––Houston 1962, no writ) (court recounted
activities each day, including driving a stake and leveling with a maintainer
one day, more maintainer work the next two days, use of a Caterpillar the
following day, constructing a road each of the next several days, and moving a
drill onto the location, continuing work on the rig and drilling without
interruption when lease required drilling or reworking operations with no
cessation of more than sixty consecutive days); Morrison v. Swaim, 220
S.W.2d 493, 494–96 (Tex. Civ. App.––Eastland 1949, writ ref’d n.r.e.)
(detailing work done each day after expiration of the primary term on well
drilled before end of primary term under a lease that remained in effect after
the primary term as long “as the lessee in good faith shall conduct drilling
operations thereon and should production result”).  





[8]Attorney’s
fees are available in very limited cases involving trespass to try title:  between a party claiming under record title
and a party claiming by adverse possession when statutory prerequisites are
satisfied.  Tex. Civ. Prac. & Rem. Code Ann. § 16.034(a) (Vernon
Supp. 2009).  This very narrow exception
is not applicable here.